GREENWOOD CEMETERY LAND COMPANY v. JOHN L. ROUTT ET AL.

1. DISCRETION NOT TO BE CONTROLLED BY MANDAMUS.—The writ of *mandamus* may, in a proper case, be allowed to command action, but not to control discretion.

2. THREE DEPARTMENTS OF GOVERNMENTAL POWERS.—The legislative, executive and judicial departments of the state government are distinct from each other, and so far as any direct control or inter-

ference is concerned, are independent of each other; but the powers of a single department are not absolute, and may be incidentally affected by the action of another department.

3. POWERS OF THE SEVERAL DEPARTMENTS.—The supreme executive power of the state is vested in the governor. The legislative power is vested in the general assembly. The judicial power is vested in the courts; and they are charged with the responsibility of trying and determining suits and controversies affecting both public and private rights, and, for this purpose, are invested with the authority of construing the constitution and laws of the state.

4. EXECUTIVE ACTION NOT TO BE CONTROLLED BY MANDAMUS.—The action of the governor in the exercise of his political or governmental powers, whether the same are conferred by the constitution or by statute, cannot be controlled by *mandamus*.

5. WHEN ACTION OF GOVERNOR NOT EXECUTIVE, MAY BE CONTROLLED. —If in the exercise of some power neither political nor essentially governmental the law specially enjoins upon the governor the performance of some particular act under circumstances in which he has no discretion, and he refuses to perform the act, and by his refusal a party is deprived of his property or other legal right, the injured party may have relief by *mandamus* against the governor, if there be no plain, speedy and adequate remedy in the ordinary course of law.

6. STATE LAND BOARD, ITS AUTHORITY AND DISCRETION.—The State Board of Land Commissioners consists of four members of equal authority; their discretion is to be exercised collectively, and is not included in the supreme executive power which is vested alone in the governor.

7. PATENT FOR PUBLIC LAND, WHEN TO ISSUE.—Where public land has been regularly sold by the state land board, the purchaser, or his assignee in good faith, is entitled to a patent therefor to be signed by the governor and otherwise attested as the law directs, whenever such purchaser or assignee has paid or tendered the full purchase price with lawful interest as the law provides, and has otherwise complied with all the conditions of the purchase; and under such circumstances *mandamus* is an appropriate remedy in case of a refusal to execute and deliver the patent.

*Appeal from District Court of Arapahoe County.*

THIS was an application in the district court by "The Greenwood Cemetery Land Company" for a writ of *mandamus*.

Upon the filing of the petition an alternative writ, reciting

in substance the allegations of the petition, was issued, directed to " John L. Routt, Edward J. Eaton, Joseph H. Maupin and N. B. Coy, comprising the State Board of Land Commissioners of the state of Colorado and Matt France, register of the State Board of Land Commissioners." The command of the writ was in substance that said defendants, Routt, Eaton, Maupin and Coy, as the State Board of Land Commissioners, receive from petitioner, The Cemetery Company, the money tendered to them, as balance of the purchase price for the land described in the petition and writ, and that they execute unto the petitioner a patent from the state of Colorado for said land, and that said Routt as governor do sign the said patent, and that said France as register do countersign said patent and place thereon the seal of the State Board of Land Commissioners, and deliver the same unto the petitioner, or the said defendants show cause before the court on, etc., why they have not done the acts so commanded.

The defendants made return or answer in which, among other things, they plead :

" That plaintiff ought not to have and maintain this action against them, because said court has no jurisdiction to compel. the defendant Routt, by *mandamus* or otherwise, to sign the patent, as prayed for."

The portion of the answer thus set forth was considered and treated by the court and the parties to said cause as a demurrer to the petition. Upon consideration of the issue thus presented, it was " adjudged and determined by the court that it has no power, authority or jurisdiction to compel the said Routt, as governor of the state of Colorado, to sign a patent for land as prayed for in and by the said petition, and that the said Routt as governor of the state of Colorado, is not subject to *mandamus* issuing from this court, by reason of the fact that he is the head of the executive department of the state of Colorado."

The petition was thereupon dismissed. To review this judgment the plaintiff brings this appeal.

Messrs. HARTZELL & PATTERSON, and Messrs. RIDDELL, STARKWEATHER & DIXON, for appellant.

Mr. J. H. MAUPIN, attorney general, and Mr. H. B. BABB, for the appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The defendants by a separate and distinct plea, incorporated in their answer, challenged the jurisdiction of the court to issue the writ of *mandamus* against the governor. Such plea being in the nature of a demurrer to the petition, was by consent of the parties and the court, treated as raising a question of law to be considered and disposed of in advance of any trial that might become necessary upon other matters of defense stated in the answer.

Upon the hearing, the demurrer was sustained and the writ of *mandamus* denied *solely* on the ground of a want of jurisdiction in the court to issue the writ against the governor. No other matter contained in the answer was considered or determined by the district court. The review upon this appeal must accordingly be limited to the technical legal question of jurisdiction.

It may be here remarked that the jurisdictional question could not have been avoided by applying in the first instance to this court for the exercise of its original jurisdiction, inasmuch as by the express terms of the constitution, art. 6, sec. 11, the district courts are invested with original jurisdiction of all causes both at law and in equity.

It is an elementary rule that a demurrer admits the truth of all allegations of fact in the pleading demurred to so far as the same are well pleaded. No objection, other than the jurisdictional one above stated, having been taken to the sufficiency of the petition either as to matters of form or substance, we are justified in assuming for the purposes of this opinion that the facts stated in the petition are not only true, but that they are sufficient in substance to entitle the peti-

tioner to relief by *mandamus* but for the fact that such relief is asked against the governor.

The course of proceeding adopted for disposing of this litigation in the district court virtually compels this court to decide whether the writ of *mandamus* may issue against the governor under the circumstances set forth in the petition as though no defense had been interposed upon the merits.

The question is an exceedingly delicate one ; and it is with reluctance that we undertake its decision. Nevertheless, as the question is properly presented by the record, it is unquestionably the duty of this court to pass upon and determine the same according to our best judgment. The isolated form in which the question is presented will at least relieve us from the charge of *obiter dictum*, or of delivering an unnecessary opinion upon the subject.

Under what circumstances, if at all, may the action of the chief executive of the state be controlled by *mandamus* or other judicial process ? This question has been a fruitful source of controversy in several of our sister states. Some phases of the question are easy; and up to a certain point the decisions are in substantial accord. As to other phases the most diverse views have been expressed; and it would be exceedingly difficult to trace the current of judicial opinion or to determine the weight of authority. After much consideration, without commenting at length upon the various decisions and without attempting to reconcile authorities, we shall briefly state our own views, and endeavor to place the decision upon those principles of right and justice recognized and established by our free constitutional government.

It is scarcely necessary to say that the official discretion of the governor cannot be controlled by *mandamus*. This court has repeatedly announced the general rule that while the writ may in a proper case be allowed to command action, it will not be used to control discretion. *Union Colony v. Elliott*, 5 Colo. 373 ; *People ex rel. Rucker v. Dis. Ct.*, 14 Colo. 396 ; *People ex rel. Rosenfeld v. Dis. Ct.*, 16 Colo. 347.

The authorities are uniform that the courts cannot by *mandamus* control the action of the governor in the exercise of any of his political or governmental powers, whether the same are conferred by the constitution or by legislative enactments. In the exercise of political and governmental powers the governor is independent, or, at most, is answerable only to the high court of impeachment, or, as in the case of other elective officers, to the people. Mechem on Public Officers, sec. 954, *et seq.*

But may not the governor be invested with certain powers and duties in the exercise of which, under certain circumstances, he may have no discretion—powers and duties which are neither political nor governmental in their nature—powers and duties which might have been devolved upon some other officer or person—powers and duties pertaining to transactions of a purely business or financial character, and in which the specific rights of private persons, as well as the rights of the public, may be involved? Strange to say, in response to questions like the foregoing, some difference of judicial opinion has been expressed; but the greater number of opinions, and opinions which seem to us sustained by the better reason, concur in an affirmative answer.

Without further comment at this juncture, let us proceed to further inquiries bearing more directly upon the subject under investigation. If, in the exercise of some official power neither political nor essentially governmental, the law specially enjoins upon the governor as a duty the performance of some particular act, under circumstances in which he has no discretion, and he refuses to perform the act, and by his refusal a private individual is deprived of his property or other legal right, is there no remedy? And further, if there be no plain, speedy and adequate remedy in the ordinary course of law, is the injured party to be denied redress by *mandamus* for the *sole* reason that the party committing the injury is the governor of the state?

Prominent among the objections urged why the governor should not be held subject to judicial process seeking

to control his official action *in any case,* is that by article 3 of the constitution the governmental powers of the state are divided into three distinct departments—the legislative, executive and judicial—and that no person or collection of persons charged with the exercise of powers properly belonging to one of these departments is allowed to exercise any power properly belonging to either of the others, except as the constitution expressly directs or permits ; and that by article 4, sec. 2, the supreme executive power of the state is vested in the governor.

We have already indicated that the governor as chief executive cannot be directly controlled in the exercise of his political or governmental powers by judicial process. As to matters properly pertaining to the executive department, he is independent, and may act or refuse to act according to the dictates of his own judgment. It is scarcely necessary to say that members of the legislative department cannot be directly controlled in the exercise of their legislative powers by any judicial process. The legislature cannot be thus compelled to pass an act, even though the constitution expressly commands it ; nor restrained from passing an act, even though the constitution expressly forbids it. The judicial department of the state government is also charged with the duty of expounding and construing both the constitution and laws of the state; and with hearing, trying and determining suits and controversies affecting both public and private rights. Within its appropriate sphere the judiciary is independent ; its legitimate province cannot be invaded by others ; nor can it properly evade its own responsibilities.

Thus, the departments are distinct from each other, and, so far as any direct control or interference is concerned, are independent of each other. More, they are superior in their respective spheres. Nevertheless, indirectly, or, perhaps, it should be said, incidentally, by the action or non-action of one department the powers of the other departments may be more or less affected. The governor may refuse to ex-

ercise some of his governmental or political powers, or may exercise them in such a way as to embarrass the other departments. The legislature by passing or refusing to pass certain laws may affect both the executive and judicial departments. So the judiciary in passing upon a statute which has received both legislative and executive approval may give it a construction different from what its authors intended, thus affecting, or perhaps, defeating, its operation. Thus it appears that the different departments, though separate, distinct and independent to a certain extent, are by no means absolute. The distribution of governmental powers to different departments was obviously intended as a check upon the exercise of arbitrary power by any department; thus a government of balanced powers was established with checks and counter-checks for the better protection of society and the better security of private rights and individual interests.

Before it can properly be held that the court is without jurisdiction to control the governor in the matter of signing the patent, it must appear that the governor's action in the premises is discretionary, or that it properly pertains to the executive department of the government as one of his governmental or political powers, or else it must appear that the subject-matter of the litigation is not within the sphere or class of powers properly belonging to the judicial department.

First, it may be observed that the act which petitioner in this section asks that the governor may be required to perform, is not devolved upon the governor by the executive article of the constitution. Article 9 of the constitution, entitled "Education," provides that the governor, superintendent of public instruction, secretary of state and attorney-general shall constitute the State Board of Land Commissioners, and that they shall have the direction, control and disposition of the public lands of the state, *under such regulations as may be prescribed by law.*

By the act of April 2, 1887, it is provided that a majority of the Land Board shall constitute a quorum for the trans-

action of business; that the governor shall be president of the board, but that in his absence from any meeting, the board may elect one of its members president *pro tempore* to preside at such meeting; the board may, also, appoint a register, not a member, whose duties, among other things, shall be to have the custody of its records and seal.

By an amendment to the act of 1887, *supra*, Sessions Laws. 1891, p. 257, it is provided that the purchaser of any state land may make full payment at any time; and that whenever a purchaser " has complied with all of the conditions of the sale, and paid all purchase money with the lawful interest thereon, he shall receive a patent for the land purchased; such patent shall be signed by the governor, and counter-signed by the register, attested with the seal of the State Board of Land Commissioners; and when so signed such patent shall convey a good and sufficient title in fee simple."

From the foregoing it will be seen that the governor is one of four members constituting the State Board of Land Commissioners; the constitution confers upon him no greater power or authority than either of the other members. By making the governor president of the board the statute gives him no authority over the other members; by providing that a majority of the board shall constitute a quorum, the other three members, if agreed, may act without the governor's concurrence. In like manner, the signing of the patent is a duty which might have been devolved upon any other member of the board, or upon all, or upon a majority of them; it is a duty which by the express and unequivocal terms of the statute depends upon the full completion of certain acts to be performed by the board on the one part and by the purchaser on the other; it can only be required when the acts, of which the patent is the appropriate evidence, have already been fully and completely performed by the contracting parties.

The statute requires the board to exercise its discretion as to the time when any parcel of school land shall be offered for sale; its discretion may also be required in the fixing

of the minimum price and other particulars; but such discretion is to be exercised by the Land Board in its collective capacity, and not by the governor individually. The discretion and power of the Land Board being vested in the members collectively, cannot, therefore, be held to be included in the supreme executive power which is by the constitution vested *alone* in the governor. Article 4, sec. 2, *supra.*

The Land Board having determined to sell, and having taken the steps necessary to that end, the statute is very specific as to the manner in which the sale shall be conducted. The rights of purchasers and of the state are carefully guarded as to the amount, time and mode of payments, the application of the purchase money, the evidences of sale to be given to purchasers, and other details.

No one can carefully read the statute regulating the sale of public lands without reaching the conclusion that it was intended to place the proceedings of the Land Board in conducting such sales upon a purely business basis; there is nothing of a political nature or of a discretionary character in the duties of the board, or of any member or officer thereof, in the matter of conducting such sales, or in their subsequent dealings with purchasers; the transactions are commercial rather than political or governmental. The land having been duly offered for sale, and the proceedings having been conducted and the land sold as the statute provides, the duties of the board thereafter in reference to the land so sold are wholly ministerial.

We must not be understood as intimating that after offering the land for sale the board may not thereafter withdraw the same from the market before the rights of third parties have attached. But if, as by the demurrer in this case we are to suppose, the land has been sold, and the purchaser and his assignee have invested over $15,000 in the purchase, over $13,000 of which has been paid into the state treasury and the residue to the owner of the surface improvements as the law directs,—if the purchaser or his assignee has fully

complied with all the conditions of the sale and tendered full payment of the balance of the purchase money as the law permits,—if the sale has in fact been thus actually and in good faith consummated, it would seem strange if the law would permit the Land Board or any officer thereof to obstruct the rights of the purchaser or his assignee in the premises. A refusal to execute the patent under such circumstances would greatly embarrass the petitioner in the enjoyment of the land thus purchased, and perhaps cause the loss thereof altogether by withholding the instrument which the statute provides shall convey a "good and, sufficient title in fee simple."

To the argument that the court cannot compel the execution of the patent because its mandate cannot be issued against the governor, it may be replied, that the same section of the constitution which vests "the supreme executive power of the state" in the governor, also provides that he shall "take care that the laws be faithfully executed." Besides, it cannot be gainsaid that the determination of suits and proceedings involving rights to property is peculiarly within the province of the judicial department; it is the duty of the courts upon proper presentation of such matters to hear and determine and give judgment as the law directs. The general rule is that private rights must be regarded irrespective of the parties to the controversy. When the governor has had his day in court in a suit or action with a private citizen in a matter affecting a specific vested right of the latter and not involving the political, governmental, or other discretionary power of the former, and the action is finally determined in favor of the citizen, there can be no doubt that it is the duty of the governor, the same as any other party, to yield obedience to the judgment of the court.

The argument which has been strongly urged in some cases, though not in this, that the court should not declare the law nor give judgment in a case of this kind against the governor, because the governor, as commander in chief of the military, might resist, is based upon a very improbable

contingency; such an argument is alike discreditable to the executive and to the judiciary of a free and enlightened state.  The governor would have no more right, nor do we believe he would have any more inclination, in a case of this kind, to resist the mandate of the court than in a case in which he as a private citizen might be a party, or, for that matter, in a case in which he might not be personally connected with the litigation.  In any event, the judiciary cannot properly shrink from its duty.  Every person in the state, whatever his rank or station, is entitled to the equal protection of the laws; every person is also subject to governmental authority; and the courts are charged with the responsibility of declaring the law applicable to any and all controversies, properly presented, according to their best judgment, to the end that the rights of all persons may be protected and their grievances redressed.

Perhaps we should not conclude this opinion without more direct reference to what others have said upon this subject. In an elaborate opinion delivered many years ago, Chief Justice Marshall of the supreme court of the United states declared :

"It is not by the office of the person to whom the writ is directed, but by the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined."

Notwithstanding this proposition has been characterized as *obiter*, it has served as the text for numerous judicial decisions, state and federal.  Its acceptance is doubtless attributable in some degree to the great eminence of its author as a constitutional lawyer and jurist, but more particularly, we think, to the fact that it so clearly and correctly announces the legal principle applicable to proceedings by *mandamus* against public officers under republican forms of government.

In an able opinion by Mr. Justice Cooley, of the supreme court of Michigan, it is said :

"In many cases it is unquestionable that the head of an executive department may be required by judicial process to

perform a legal duty, while in other cases, in our judgment, the courts would be entirely without jurisdiction; and, as regards such an officer, we should concede that the nature of the case and of the duty to be performed must determine the right of the court to interfere in each particular instance."

This language is a practical admission of the principle announced by Marshall, so far as all executive officers, save the chief executive, are concerned. But in the same opinion Judge Cooley gives, among other reasons for excepting the governor *in all cases*, the following:

"There is no very clear and palpable line of distinction between those duties of the governor which are political, and those which are to be considered ministerial merely; and if we should undertake to draw one, and to declare that in all cases falling on one side the line the governor was subject to judicial process, and in all falling on the other he was independent of it, we should open the doors to an endless train of litigation, and the cases would be numerous in which neither the governor nor the parties would be able to determine whether his conclusion was, under the law, to be final, and the courts would be appealed to by every dissatisfied party to subject a co-ordinate department of the government to their jurisdiction."

With great respect for the distinguished jurist and author we are constrained to say, that the grounds of exemption thus stated do not meet the approval of our judgment; the reasoning seems to be at variance with common experience, and contrary to the principles underlying the judicial systems of this country. Courts are constantly called upon to decide cases in which the line of distinction is not very clear or palpable. The doors of litigation are already wide open, and must constantly remain so in a free government. Numerous cases are brought and the courts are constantly appealed to by dissatisfied parties in an almost endless variety of cases. Litigation unquestionably increases as society advances. With the progress of civilization, with the increase of wealth

and population, with new discoveries and inventions, new fields for judicial inquiry are opened for exploration. With the multiplied wants, desires and aspirations of an enlightened but aggressive race, rapidly increasing in numbers, and thereby coming in closer contact and often in conflict with each other, new and difficult questions in respect to their legal and equitable rights will arise, resulting in legal controversies which will be unceasingly pressed upon the consideration of the courts until they are determined by the highest judicial authority within the reach of litigants.

But the courts cannot, because of the increase of litigation, shut the door against litigants applying for an adjudication of their controversies. These controversies are frequently due to an honest misapprehension as to the rights of the respective litigants. The majority of our people who may be engaged in litigating their honest differences will generally acquiesce in the decisions of the highest judicial tribunal of their country, without serious complaint, when substantial reasons for the decisions are fairly stated; but they will not be satisfied by an arbitrary rule which precludes them from having their differences heard and determined upon the merits; and, especially, will they not be satisfied when such arbitrary rule rests upon nothing more substantial, or more acceptable to a free citizen, than the official rank or dignity of the adverse party.

. Want of time and space forbids further comment upon the decisions cited by counsel in their excellent briefs. The following are some of the authorities which have been considered in the preparation of this opinion. *Marbury v. Madison,* 1 Cranch, 170; *Sutherland v. The Governor,* 29 Mich. 320; *Middleton v. Low,* 30 Cala. 596; *State ex rel. v. Chase,* 5 Ohio, 528; *Martin v. Ingham,* 38 Kan. 641; *Magruder v. Swann,* 25 Md. 209; *Gray v. The State,* 72 Ind. 567; *Smith v. Myers,* 109 Ind. 1; *Mott v. Penn. R. R. Co.,* 30 Pa. St. 33; *Hartranft's Appeal,* 85 Pa. St. 443, et seq.; *People ex rel. v. Bissell,* 19 Ills. 229; *State ex.rel. v. Warmoth,* 22 La. Ann. 1, *State ex rel. v. Governor,* 39 Mo. 388; 2 Dillon's Mun. Corp.

(3d ed.), sec. 834; Moses on Mandamus, 80–84; ·High's Extraordinary Remedies, sec. 118 *et seq.;* Mechem on Public Officers, secs. 954–956; Cooley on Torts, chap. 1.

The language of this opinion in reference to the facts of the case is to be understood as based upon the theory, stated at the outset, that the facts, for the purpose of determining the legal question involved, are admitted by the demurrer; we express no opinion as to what may be the real facts or merits of the controversy.

Our conclusion is that the district court erred in deciding that it did not possess the jurisdiction to hear and determine the cause upon its merits. The judgment is accordingly reversed and the cause remanded.

*Reversed.*