THE PEOPLE EX. REL. EATON, PLAINTIFFS, v. THE DISTRICT COURT, ETC., ET AL., DEFENDANTS.

1. STATUTORY CONSTRUCTION.

An unusual and extraordinary investure of power should not be inferred from doubtful or ambiguous language found in a statute.

2. SAME—ELECTION LAWS.

The power vested in the secretary of state by sec. 13 of the act known as the "Australian Ballot Law," to decide objections to certificates of nomination is limited to matters of form only.

3. SAME.

When two sets of nominations, both by conventions purporting to have been held by the same political party, and each in apparent conformity with law, are certified to the secretary of state, he has no power to decide between them, but should certify both tickets to the county clerks in order that both may be printed upon the official ballots.

4. SAME.

In cases of doubt between two constructions that should be adopted, which will afford the citizen the greater liberty in casting his ballot.

5. LEGISLATIVE POWER.

The legislature may enact necessary laws for the purpose of regulating in detail the manner of conducting elections, but it cannot, under the guise of regulation, substantially impair the constitutional right of any elector to cast his vote at each election according to his own preference, and to have it counted as cast.

6. OFFICIAL FUNCTIONS.

It is not the province of either executive or judicial officers to give official sanction to the mere course, regularity or genuineness of any political organization as such.

7. MANDAMUS.
The writ of mandamus lies to compel the performance of an act which
the law especially enjoins as a duty resulting from an office, trust
or station. It lies to compel action, but not to control discretion.

*Original Proceeding.*

A CONVENTION of the Democratic party of the state of
Colorado recently convened in the city of Pueblo. This con-
vention appears to have been regularly called in accordance
with the practices of the party in such cases for the purpose
of nominating presidential electors and a full state ticket to
be voted for at the approaching election.

Upon the assembling of this convention, a disagreement
arose between the members. This disagreement caused a
division of the convention into two bodies, each claiming the
right to act for and on behalf of the Democratic party of the
state. One of these conventions organized by the election
of T. J. O'Donnell as president and H. W. Havens as secre-
tary, and the other by the selection of Benj. F. McDaniel as
the presiding officer and S. Harrison White as secretary.
Both of these conventions proceeded to make nominations,
and the same were certified in due form to the secretary of
state within the time provided by law. In one certificate it
is certified that T. J. O'Donnell was the presiding officer
and H. W. Havens the secretary of a convention of the
Democratic party of the state of Colorado held at Pueblo in
said state on the 12th day of September, 1892; and in the
other it is certified that Benj. F. McDaniel was the presid-
ing officer and S. Harrison White the secretary of a conven-
tion of the Democratic party of the state of Colorado held
at Pueblo in said state of Colorado on the 12th and 13th
days of September, 1892. To the filing of each of these cer-
tificates objection was thereafter made in the nature of a
verified protest signed and sworn to.

The protest against the filing of the O'Donnell certificate
is in substance as follows. That the persons nominated as
electors by the convention presided over by Mr. O'Donnell

are pledged to vote for James B. Weaver for president, and James G. Field for vice president, candidates of the Peoples' party, and are pledged to vote against the candidates of the Democratic party for president and vice president, and are therefore not the nominees of and do not represent the Democratic party. Whereas the electors nominated by the convention presided over by McDaniel are pledged to vote for Grover Cleveland for president and Adlai E. Stevenson for vice president, and are, therefore, as claimed by said protest, the representatives and nominees of the Democratic party. Afterwards, such proceedings were had before the secretary of state upon these protests,.as resulted in the decision of the secretary to the effect that the names of the McDaniel electors should be certified to the various county clerks of the state to be printed upon the official ballots, and that the names of the electors chosen by the O'Donnell convention were not entitled to be so certified.

A further result of these two conventions was the putting in nomination of two complete state tickets. The O'Donnell branch of the Democratic party being dissatisfied with the decision of the secretary of state, commenced proceedings in the district court for the purpose of enjoining the secretary from certifying the nominees of the McDaniel convention, and for the further purpose of obtaining a writ of mandamus directed to the secretary to compel him to certify the nominees of the O'Donnell convention, so that their names alone might be printed upon the official ballots. To the petition in the district court the secretary in due time filed his answer. In this answer the jurisdiction of the district court is denied and the acts of the secretary in the premises set out at length.

The district court having overruled the plea to its jurisdiction, the secretary made application to this court for a writ of prohibition in order that the question of jurisdiction of the district court might be determined. The application was made upon notice, and a full hearing had thereon.

Mr. James H. Brown and Mr. A. B. McKinley, for plaintiffs.

Mr. T. J. O'Donnell and Mr. T. M. Patterson, for defendants.

Chief Justice Hayt delivered the opinion of the court.

The controversy in this case is between two branches of the Democratic party. It is precipitated upon the courts in the heat of a political campaign and at a time when party and factional feeling is at its height. This statement is sufficient to show that the question to be determined is one that the courts would gladly avoid if it were possible to do so without being recreant to duty. However, as the issue is forced upon us, it must be met and determined the same as other controversies.

The contest arises under what is familiarly known as the Australian ballot law, enacted at the last session of the legislature. In its decision is involved the right to have printed upon the official ballots the names of the nominees of two separate conventions, both claiming to represent the Democratic party of the state of Colorado.

The contention of relator in this proceeding is that the secretary of state has jurisdiction under the act to hear and determine the controversy between these divisions of the Democratic party, and that his decision thereon is not subject to review.

The first question to be determined, therefore, has reference to the powers and duties of the secretary of state in case objections are filed to nominations.

The Australian ballot system in one form or another has been adopted in many of the states of this Union. The act as it exists to-day in the island of its birth and from which it derives its name has, however, been modified and changed to such an extent that it is impossible to find anything more than a general similarity between the acts of the various

states.    This legislation is the result, however, of an effort
in the interest of ballot reform, and therefore commends it-
self not only to the courts, but to all those solicitous for the
purity of the ballot.    No doubt the act as found upon the
statute books of this state is crude in many particulars, and
perhaps totally silent upon matters which the legislature
should have put at rest by positive enactment.    Experience
will, doubtless, suggest change, but until such changes are
made, it is the duty of the courts to uphold the integrity of
the act and to so shape their decisions as to best advance
the interests of ballot reform.

The first section of the act provides that "all ballots cast
in elections * * * shall be printed and distributed at pub-
lic expense."    By the terms of the act a candidate for office
can only receive the suffrages of voters in case his name is
placed upon the official tickets, and the name of candidates
for state or national offices can only be placed upon such
official tickets when the names are duly certified by the sec-
retary of state to the county clerks.    This brief statement
will suffice to show the importance of the questions now
presented.

In determining the powers of the secretary of state in the
present instance, it will be well to note the far-reaching ef-
fect of the authority claimed for him by his counsel.    It is
contended that when objections are filed to nominations, it is
the exclusive province of the secretary to pass upon such
objections, and that his decisions thereon are final.    If this
be true, then in the present case as objections were filed to
both sets of nominations made by the Democratic party, the
secretary of state by his decision might have prevented either
ticket from being recognized at the approaching election.
If the secretary is correct in assuming that by the provisions
of the act he was authorized to reject the nominations made
by the O'Donnell convention, his power to reject the nom-
inees of the McDaniel wing of the party must also be con-
ceded.

If this power is lodged in the hands of the secretary, it is

a most unusual investiture of power.    Certainly such power should not be inferred from any doubtful or ambiguous language to be found in the act.    Counsel agree that it was unwise on the part of the legislature to clothe the secretary of state, a mere ministerial officer, with the powers claimed for him in this case, but say that the remedy should come from the legislature and not from the courts.    The fact that the power is extraordinary and its exercise liable to result in the most stupendous consequences, calls for a critical examination of the act, in order that we may determine at the outset whether or not this unusual power has been conferred by its terms upon a purely ministerial officer.    The secretary of state in this instance is exercising, or attempting to exercise, a quasi-judicial power.    The common law furnishes no precedent for the exercise by such an officer of the power claimed, and we must look to the statute for such authority, if it exists.

The section of the statute more particularly relied upon by the officer in the present controversy, is section 13 of the act under consideration.    This section read as follows:

"Sec. 13. All certificates of nomination which are in apparent conformity with the provisions of this act, shall be deemed to be valid, unless objection thereto shall be duly made in writing within three days after the filing of the same.    In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective post-office addresses, if any, or places of residence, as given in the certificate of nomination.    The officer with whom the original certificate was filed, shall pass upon the validity of such objection and his decision shall be final *Provided*, such officer shall decide such objection within at least forty-eight hours after the same is filed; and any objection sustained may be remedied or defect cured upon the original certificate, or by an amendment thereto, or by filing a new certificate within three days after such objection is sustained."

An examination of this section will show that it provides

*First,* that all certificates of nomination which are in apparent conformity to the act shall be deemed valid unless objection is filed thereto. *Second,* that when such objection is made, notice thereof shall be given to the candidates. *Third,* the officer with whom the original certificate is filed, in this case the secretary of state, shall pass upon the same and his decision shall be final; provided, that such decision shall be made within forty-eight hours after the objection is filed, and that any objection sustained may be remedied, etc.

The nature of the objections upon which the officer may pass under this section becomes an important question. It is claimed by the secretary that it authorizes him to determine any and all objections that may be made; on the contrary, respondents contend that it was the intention of the legislature to confer upon the officer power simply to correct defects such as the designation of offices, the name of candidates, and formal defects which may be cured by amendment.

An examination of the section will show that it will permit of two constructions, by one of which the secretary would be permitted to pass upon all matters both formal and substantial, while by the other he is only empowered to pass upon mere formal matters. The latter construction seems to us the better one to adopt. This conclusion is supported by the following, among other reasons: *First,* under it the powers of the secretary are confined more nearly within the usual limitations placed upon the powers of such officers; and *second,* the act nowhere provides for a hearing before determination, while the notice provided for is so short that it must often happen that the rights of candidates would be determined before notice could be given. Again, the time in which this must all be done and a decision rendered is so restricted, forty-eight hours, that it seems to us to present an unanswerable argument to the claim made, that it was the intention of the legislature to confer such extraordinary power upon the secretary of state as that embraced in the opposite conclusion,—a power whereby the political destinies of the state might be determined; a power so vast, far-

reaching and potent as to put it at once upon a plane of importance in comparison with which the most important litigation between individuals appears insignificant. We think the construction which holds that the secretary of state is empowered to pass upon matters of form only, is not only more in accordance with the general spirit of the act, but more in consonance with the better reasoning upon the subject, and finds support from the authority given for curing all defects to which objection may be sustained. In the present instance, the objections are so radical that if sustained, no cure by amendment is possible.

As to what were the duties of the secretary of state under the circumstances of this case, is still, however, to be decided. Here we have to deal with two conventions, each claiming the right to represent the same political party. The act itself will be searched in vain for any provision for such a contingency. It was not contemplated by the legislature, and therefore not provided for. It should not be a matter of surprise that the act as originally passed is not perfect in all particulars. The beneficent laws of the world have grown with time, as the result of experiment and amendment.

There being no provision in the act for a condition such as we have presented in this case, some have reached the conclusion upon reading section 3 of the act that the secretary of state could only certify one ticket as the ticket of the Democratic party, and that therefore of necessity the duty devolved upon him of determining which of these conventions was entitled to speak for the Democratic party of the state of Colorado. Certainly, a court would be doing violence to the intelligence of any legislative body to assume that it was intended that such a question could be determined within forty-eight hours from the time objections were filed. The validity of the organization and acts of each convention is embraced in the controversy, the determination thereof involving party usages, party practices and party principles, necessitating perhaps the taking of evidence of witnesses living at widely separated points. The section of

the act under which it has been claimed the duty devolves upon the secretary of state to determine which convention is entitled to represent the Democratic party applies to county, city and town clerks equally as well as to the state officer. It is as follows:

" Sec. 3. Any convention of delegates of a political party which presented candidates at the last preceding election held for the purpose of making nominations to public offices, and also voters to the number hereinafter specified, may nominate candidates for public officers to be filled by election within this state. A convention within the meaning of this act is an organized assemblage of voters or delegates representing a political party, which at the last election before the holding of such convention polled at least ten per centum of the entire vote cast in the state, county or other political division or district for which the nomination may be made. A committee appointed by any such convention may also make nominations to public office when authorized to do so by resolution duly passed by the convention at which such committee was appointed."

The argument upon this section is that to entitle the convention of any party to nominate candidates for public offices, such party must have polled at least ten per centum of the entire vote cast in the state at the last preceding election, and that only one set of nominations can be filed by a single political party. That the argument has force will be admitted. It is quite probable the legislature had in contemplation the nomination of one ticket only by a political party, as the statute makes no provision for the condition with which we are here confronted. In this case we have two certificates of nomination, each in apparent conformity with the law. As we have shown, the secretary of state is not empowered to decide as between these certificates. Therefore, it is his duty to certify both tickets to the county clerks in order that both may be printed upon the official ballots. By pursuing this course, the merits of the opposing candidates will be submitted to the people,—the tribunal under

our system of government that must ultimately pass upon such questions. The conclusion that the secretary of state should under the circumstances certify both sets of nominations to the county clerks to be printed upon the official ballots, is in harmony with the rule of construction which requires the courts in cases of doubt between two constructions to follow that which will afford the citizen the greater liberty in casting his ballot. This is in accordance with the previous decisions of this court. In the case of *Kellogg v. Hickman*, 12 Colo. 256, Mr. Commissioner Stallcup, in an able opinion which was adopted by this court after careful consideration, held that this should be the policy of the courts. See, also, *Allen v. Glynn*, 17 Colo. 338. The severe penalties provided by the act for the filing of a false certificate of nomination will, we think, furnish a sufficient safeguard against fictitious certificates; if not, the power is in the legislature to provide adequate protection.

Little weight should be attached to the argument that the voters may be deceived by having two democratic tickets in the field. At one time, no doubt, voters were often misled by having names printed under certain designated headings that did not properly belong thereunder. But this deception was only accomplished by secrecy and by the lateness of the hour at which such irregular tickets were distributed, usually only upon the day of election. But under the present law, the danger of deception in the manner indicated is certainly reduced to the minimum. The secretary of state is required to certify these tickets to the county clerks, and the county clerks must in turn cause the same to be published several days before the election; thus the fullest opportunity to expose fraud and prevent deception is provided for. In the present instance, different emblems were selected by the two conventions, and this furnishes an additional safeguard against deception.

A construction which requires the officer to certify both sets of nominations is not unsupported by authority. The supreme court of the state of Michigan in the case of *Shields*

*et al. v. Jacob et al.*, 88 Mich. 164 (50 N. W. Rep. 105), uses the following language with reference to a somewhat similar question :

" We do not consider that it is the province of the board of election commissioners to determine which convention represented the regular nominating convention of the party, but that it is the duty of said board to print and place upon the ballot the names of the candidates certified to them by the committee of either branch of the party represented by the two conventions held to nominate city officers, and that the names so certified to them in each list shall be embraced in the ticket so printed ; and that it is their duty further, if the same name of a party shall be certified by each of two committees, that the name so certified shall be printed without further addition or distinctive designation than such as is contained in the certificates furnished."

Our conclusion is, that under the circumstances disclosed by this record, neither the secretary of state nor the courts are called upon to decide which of the two rival conventions was entitled to act for the Democratic party of Colorado. Until some statute clothes some tribunal with such power, the matter should, in our judgment, be left for adjustment elsewhere.

So far as possible we have aimed to decide the substantial rights of the parties to this controversy upon the merits, without an examination of the papers to discover mere technical defects therein.    We understand from counsel that the secretary of state has already overruled the objections to the two tickets, but being of the opinion that he could only certify one ticket to the county clerks, he is about to certify the ticket known as the McDaniel ticket, and to refuse to certify the ticket known as the O'Donnell ticket.    We think the secretary should certify both tickets.

The secretary of state being a ministerial officer authorized and required to perform a certain act not involving the exercise of discretion, to wit, the act of certifying the nominations to the county clerks, and having refused to do so, the

district court was authorized to assume jurisdiction and issue its mandate to compel him to perform the act enjoined upon him by law.   The jurisdiction of the courts in instances of this kind is now universally recognized, and we shall leave this branch of the case with the citation of a few of the many authorities to be found in this state upon the question.   *Greenwood Cemetery Land Co. v. Routt et al.*, 17 Colo. 156 ; *Stocknan v. Brooks*, 17 Colo. 248.

Finding, therefore, that the district court has jurisdiction, the writ of prohibition is denied.

Mr. JUSTICE ELLIOTT (concurring specially).

That the statute under consideration does not invest, and was not intended to invest, the secretary of state with authority to try and pass upon all kinds of objections that may be filed against certificates of nomination, and, that properly construed, it does not invest the secretary with more than ordinary ministerial or executive powers, are propositions upon which the Chief Justice has clearly expressed my views. But in respect to certain matters presented by the record and the argument of counsel, I desire to express a further opinion.

1. The legislature may undoubtedly pass all necessary laws for the purpose of regulating in detail the manner of conducting elections.   But under the guise of regulation the constitutional rights and privileges of electors cannot be infringed.   It is true, as counsel contend, the constitution provides that, " the general assembly shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise."   But the same article also provides that every duly qualified elector " shall be entitled to vote at all elections."   Const., art. 7, sections 1 and 11.

How far legislation in the interest of ballot reform may be extended, need not now be determined.   But I am firmly impressed with the conviction that it cannot be extended so far as to substantially impair the right of any elector to cast his vote at each election according to his own individual

judgment and preference, and to have the same counted as cast. These principles should not be lost sight of, either in legislation or in judicial decisions.

2. The conclusion at which the court has arrived in this case is not variant from the legal issues presented, as the unthinking may suppose. It is true, the real parties to this litigation, representing as they do the different branches of the Democratic party, appear to have framed the issues under consideration with the view to secure, if possible, some official recognization of the regularity and genuineness of their respective political organizations,—one branch contending that the secretary of state is the proper officer to decide which branch has put forth the regular, genuine Democratic ticket to be voted for at the ensuing election, the other branch contending that it is the province of the district court to decide such question. It is true, the decision of the court does not technically respond to the issues to the full extent thus presented, nor does it permit such question to be decided, either judicially or officially. This is not altogether unusual. A judicial decision should conform to the requirements of the law in respect to the subject-matter before the court. Parties cannot by the manner in which they present issues for determination compel the court to decide matters foreign to the true meaning and intent of the law.

It is not the province of either executive or judicial officers to indorse, uphold, or endeavor to give official sanction to the mere political course, regularity or genuineness of any political organization as such. Political parties as such are voluntary, not official, organizations. The statute provides how candidates nominated by political parties, or otherwise, may be placed before the electors for their suffrages, at public elections. When the requirements of the law have been complied with, the duty of the secretary in respect to certifying such nominations to the county clerks of the several counties of the state is clear. It is the province of voters by their ballots to decide between rival political parties, conventions and candidates.

3. There is no middle ground upon which to place the decision of this case. It having been determined that it is the duty of the secretary to pass only upon formal objections to certificates of nomination, it follows that since the rival certificates are each complete both as to form and contents, since each contains all the matters specified in the statute, since each is duly authenticated, verified and filed with the secretary within the time prescribed by the statute, the secretary must certify each to the county clerks. Every reason that can be urged why the secretary should certify the O'Donnell certificate bears with equal force in favor of his certifying the McDaniel certificate. It is most illogical to say that the secretary has not the power or authority to de-cide which of two certificates is valid when both are equally good in form, and when each conforms to every requirement of the statute,—and then contend that it is his duty to accept and certify one and reject the other.

4. The proposition that when two certificates of nomination equally good as to form and contents are filed with the secretary within the time prescribed by the statute, the secretary should accept and certify the one first filed, and reject the other, is wholly untenable. If such a rule were to obtain, there would be no security that regular, genuine party nominations would not, at every election, be forestalled and barred out by irregular or bogus nominations purporting to represent the same party.

5. The principle is elementary, that the writ of mandamus lies to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. The writ lies in a proper case to compel action, but not to control discretion. If the secretary could be, and actually was, authorized by law to determine which of two or more rival conventions was the *bona fide* representative of the same political party, then, perhaps, he might be compelled by mandamus to decide between them and certify the nominations of the one and reject those of the other, but his action in such case would have to be according to his own judgment

in the premises, and not according to the judgment of some other tribunal. But to say that he may be compelled by mandamus to decide when he has not the power to decide, is an absurdity. To say that the law enjoins upon the secretary the duty of certifying one set of rival nominations and the rejection of another, when he has not the authority to decide between the claims of the rival conventions from which they emanate, is equally absurd. Mandamus can never be resorted to to compel the performance of an act by an officer until his duty in the premises is shown to be clear and certain, and that he refuses or neglects to perform it.

6. Counsel have not cited any provision of the statute which by the most forced construction can be held to invest any tribunal other than the secretary himself with the authority to decide between two certificates equally good upon their face, both as to form and contents; and since it appears that the secretary has not such power or authority, it follows that the writ of mandamus cannot be resorted to in this case except for the sole purpose of compelling the certifying of the O'Donnell certificate on the ground that the same is in all respects valid upon its face. It cannot be resorted to for the purpose of securing from the district court a decision between the rival claims of the O'Donnell and McDaniel certificates as representing genuine democratic nominations; nor can it be resorted to for the purpose of prohibiting the secretary from certifying the McDaniel certificate.

*Denied.*