ROUTT ET AL., APPELLANTS, v. THE GREENWOOD CEME-
TERY LAND CO., APPELLEE.

1. STATE BOARD OF LAND COMMISSIONERS.

The State Board of Land Commissioners is a constitutional tribunal, in
which is vested the power of direction, control and disposition of
the public lands of the state, under such regulations as may be pre-
scribed by law.

2. SAME—STATUTORY REGULATIONS.

The only requirement prescribed by statute as a condition to the exer-
cise of the power to sell school lands, is that the board shall be of
opinion that the best interests of the school fund will be served by
offering the same for sale.

3. RECORD EVIDENCE NOT REQUIRED.

The board having offered the land for sale, the fact that it was of opin-
ion that the best interests of the school fund would be served by
the sale is not required to be shown by the records of its proceed-
ings.

4. PRESUMPTION.

Until the contrary is shown it is to be presumed that public officers have
properly performed their duties.

5. EVIDENCE.

The fact that the board offered the land for sale is evidence of the exist-
ence of the condition authorizing the exercise of its power.

6. DISCRETION.

The sale of school lands is confined entirely to the discretion of the
board.

7. REGISTER MAY ACT, WHEN.

There is nothing requiring the board to perform the details incident to,
nor its personal presence at, the sale.   It may direct its register to
perform all such acts without, in any measure, surrendering or dele-
gating its trust functions.

8. LAW OF THE CASE.

When the law governing a case has been once declared by the opinion
of an appellate court on a direct appeal or writ of error, such opin-
ion, on the retrial of the same case, upon the same state of facts, is
generally regarded as *res judicata*, so far as the particular action is
concerned.

*Appeal from the District Court of Arapahoe County.*

THE Greenwood Cemetery Land Company brought this

action to compel John L. Routt, Edwin J. Eaton, Joseph H. Maupin and N. B. Coy, as the Board of State Land Commissioners, and Matt. France, register of the board, to receive the money tendered them as the balance of the purchase price for a certain piece of land, and to execute a patent therefor to the company. On final hearing a peremptory writ of mandamus was ordered. To reverse this judgment respondents bring this appeal.

Mr. J. H. MAUPIN, attorney general, and Mr. H. B. BABB, for appellants.

Mr. CHARLES HARTZELL and Messrs. RIDDELL, STARK-WEATHER & DIXON, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

This action was before this court on an appeal from a judgment dismissing appellants' petition, wherein that judgment was reversed and the cause remanded for trial upon the merits. See *Greenwood Cemetery Land Co. v. Routt*, 17 Colo., 156. The respondents by their return to the alternative writ specifically denied its material averments, and affirmatively alleged that the sale was collusive and fraudulent. Upon the trial below and at the close of petitioner's evidence the respondents interposed a motion for nonsuit, which being denied, they declined to offer any evidence in support of their allegations of fraud, and rested their defense solely on the insufficiency of petitioner's evidence, and that it affirmatively proved that the proceedings of the board in the matter of the sale were not in conformity with the provisions of the constitution and statute conferring their powers and regulating their duties in relation to sales of school lands.

The sale, therefore, is unaffected by any question of actual fraud in its procurement or conduct, and must be upheld

or rescinded by determining whether or not the board acted within the scope of its powers and in substantial compliance with the requirements imposed by the constitutional and statutory provisions defining its powers and duties and regulating their performance.

The particular instances wherein appellants contend the procedure in the premises is defective or wanting in essentials may be summarized and considered under two heads :

*First.* The failure of the board to formally ascertain and enter of record its finding as to the existence of the condition upon which it is authorized to offer school lands for sale and to make formal, or any, order of sale.

*Second.* The failure of the board to advertise or designate the particular newspaper in which the notice of sale should be published, and its omission to make or superintend the sale, and in directing the register of the board to advertise and sell the land.

The record of the proceedings of the board introduced by appellee on the trial was as follows :

"Application of John S. Perky.

" State of Colorado, Arapahoe County.   Postoffice of applicant, Denver.   Date, January 4th, 1890.

" To the Honorable Board of Land Commissioners, Denver, Colo.   Gentlemen : I desire to purchase the land described in this application, and if offered, I agree and bind myself to surrender all existing leases on the land and to bid the sum set opposite each subdivision per acre, for each and every tract.

| No. of acres. | Subdivision of Section. | Section. | Township. | Range. | Price per acre. |
|---|---|---|---|---|---|
| 160 | N. W. ¼ | 16 | 3 S. | 68 W. | $300.00 |
| 160 | S. W. ¼ | 16 | 3 S. | 68 W. | 300.00 |

Or so much thereof, not less than 320 acres, as the Honorable State Board of Land Commissioners may desire to offer."

" Office of State Board of Land Commissioners,
" *Denver, Colo.*, Jan. 13, 1890.

" Called meeting. Members present: Job A. Cooper, Governor; James Rice, Secretary of State; Fred Dick, Supt. of Public Instruction. The petition of J. S. Perky for the sale of the W. ½ of Sec. 16 Twp. 3 S., R. 68 W. was read and on motion the same was granted, a minimum price of $400 per acre for the S. W. ¼ and $200 per acre for the N. W. ¼."

" Office of State Board of Land Commissioners,
" *Denver, Colo.*, Jan. 20, 1890.

" Called meeting. Members present: Job A. Cooper, Governor; James Rice, Secretary of State; Fred Dick, Supt. of Public Instruction; Samuel W. Jones, Attorney General.

" On motion the order for sale of Sec. 16, Twp. 3 S., R. 68 W. was reconsidered, and the register instructed to advertise and offer the land in 40-acre tracts, then in 160-acre tracts, accepting the highest bid for the aggregate in quarter sections."

In pursuance of this direction the register published in the Denver Weekly Times the following notice:

" Office of State Board of Land Commissioners,
" *Denver, Colo.*, Jan. 21, 1890.

" Notice is hereby given that I will sell at public auction, to the highest responsible bidder, on the 14th day of February, 1890, at the office of the State Board of Land Commissioners, Denver, Colo., at 2 o'clock P. M., the following described lands, viz.:

| Part of Section. | Section. | Township. | Range. | Minimum price per acre. | Value of improvements. |
|---|---|---|---|---|---|
| Ne. ¼ of Nw. ¼ | 16 | 3 S. | 68 W. | $200.00 | $ 425.00 |
| Nw. ¼ of Nw. ¼ | 16 | 3 S. | 68 W. | 200.00 | 387.50 |
| Sw. ¼ of Nw. ¼ | 16 | 3 S. | 68 W. | 200.00 | 368.75 |
| Se. ¼ of Nw. ¼ | 16 | 3 S. | 68 W. | 200.00 | 756.25 |
| Ne. ¼ of Sw. ¼ | 16 | 3 S. | 68 W. | 400.00 | 486.25 |
| Nw. ¼ of Sw. ¼ | 16 | 3 S. | 68 W. | 400.00 | 486.25 |
| Sw. ¼ of Sw. ¼ | 16 | 3 S. | 68 W. | 400.00 | 342.50 |
| Se. ¼ of Sw. ¼ | 16 | 3 S. | 68 W. | 400.00 | 2,705.00 |

" The above described lands will be offered, first in 40-acre tracts, then in 160-acre tracts, and the bid offering the largest sum for the land shall be accepted.

" No land will be sold at less than the minimum price per acre, as given above. The parcels will be sold in the above order, and each tract will be sold as described above, be the same more or less.

" The terms of payment shall be as follows, viz. :

" Timber lands, cash on the day of sale. On other lands, selling for $3.50 to $25 per acre, 10 per cent of the purchase money on the day of sale, the balance in eighteen equal annual payments, at 6 per cent per annum. Lands selling at more than $25 per acre and less than $75 per acre, 20 per cent cash on the day of sale, the balance in fourteen equal annual payments at 7 per cent per annum. Lands selling for $75 and upwards, 30 per cent cash, and balance in seven equal annual payments, at 7 per cent interest. If the purchaser does not own the improvements, he must pay for the same at sale. Purchaser will execute bond, as provided in section 18, act of April 2, 1887. Purchasers must be citizens of the United States, or persons who have declared their intentions of becoming such.

                                    " A. SAGENDORF,
              " Register State Board of Land Commissioners."

At the time and place therein specified the register offered the land for sale and sold the N. W. ¼ of Sec. 16, Twp. 3 S., R. 68 W. to Samuel H. Baker, the assignor of petitioner, for the sum of $204.55 per acre, he being the highest bidder.

To ascertain the nature and extent of the powers and duties of the board reference must be had to such provisions of the constitution as confer and define those powers and duties. Art. IX, sec. 9 of the constitution is as follows :

" The governor, superintendent of public instruction, secretary of state and attorney general shall constitute the state board of land commissioners, who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law."

Art. IX., sec. 10. " It shall be the duty of the state board of land commissioners to provide for the * * * sale or other disposition of all the lands heretofore or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor."

The regulations prescribed by law and in force at the time this sale was made, among other things, were as follows:

" The state board of land commissioners may at any time direct the sale of any state lands, except as provided in sections twelve and thirteen of this act. * * * All sales under this act shall be advertised in four consecutive issues of some weekly newspaper of the county in which such land is situated, if there be such paper, if not, then in some other paper published in an adjoining county, and in such other papers as the board may direct. The advertisement shall state the time, place and terms of sale, and the minimum price per acre fixed by the board of each parcel, below which no bid shall be received." Session Laws 1889, p. 34.

Section twelve referred to provides as follows:

" All lands granted by congress to the state for the support of common schools, being sections sixteen and thirty-six, and all that may be selected in lieu of said sections, are hereby withdrawn from market, and the sale thereof prohibited; *Provided*, Any parcel of such land may be sold when the state board is of the opinion that the best interests of the school fund will be served by offering such parcel for sale." Session Laws 1887, p. 332.

By these provisions certain executive officers of the state are *ex officio* members of the state land board, and constitute the tribunal having the direction, control and disposition of the public lands of the state under such regulations as the legislature may prescribe. The only condition prescribed upon which the board is authorized to sell the class of lands involved in this controversy is, " when the state board is of

the opinion that the best interests of the school fund will be served by offering such parcel for sale."

The first objection advanced by respondents to the validity of this sale is because it does not appear in the record of the proceedings of the board that it found the best interests of the school fund would be served by a sale of this land. If such determination was prescribed as a condition precedent to the sale, the proof of such fact is not required to be shown of record, and its existence could be shown by evidence *aliunde*, and even without such showing it is to be presumed that public officers properly performed their duties until the contrary is proved. " The law constantly presumes that public officers charged with the performance of official duty have not neglected the same, but have duly performed it at the proper time and in the proper manner." Mechem on Public Officers, sec. 579.

The existence of such fact is not, however, the condition upon which the board is authorized to sell school land, but when, *in the opinion of the board*, the best interests of the school fund will be served, it is authorized to sell, thus confiding the exercise of the power entirely to the discretion of the board.

That the board was of opinion that the condition existed, is evidence by its action upon the presentation of Perky's application. They offered the land for sale after fixing the minimum price at which it could be sold, and directed the register to advertise and sell it. It is strenuously insisted by the attorney general in behalf of respondents that by thus directing the register to advertise and sell, the board conferred on him a discretion that it was incumbent on the board itself to personally exercise; that in failing to designate the paper in which notice of the sale should be published, and in not personally superintending the sale it delegated its trust powers, and that by reason thereof the advertisement and sale were without warrant of law and consequently void.

While it might be the better practice for the board to designate the particular weekly newspaper in which the notice

of sale should be published, and to designate other papers as in its discretion it may, there is in the statute under and in pursuance of which this sale was made, no provision requiring this to be done.   In the first enactment regulating sales of public land, (statute of 1877,) it was expressly made the duty of the board to designate the newspaper in which the notice of sale should be published; but in the amendment of 1881 and in all subsequent enactments such requirement is omitted, and in lieu thereof it is provided that notices of sales shall be published "in four consecutive issues of some weekly newspaper of the county in which the land is situate * * * ," and it is left discretionary with the board to designate in addition any other paper.

The publication of the notice in this case in a weekly newspaper of this county is conceded.   That the notice was in all substantial respects in compliance with the requirements of the law and published the specified time, is apparent.   It is also in evidence that the same paper has been the medium in which notices of prior sales in the county have been published, and was the weekly newspaper of this county contained in the list of papers on file in the office of the board in which notices of sale of public land were usually made. This evidence is referred to only for the purpose of showing that in this particular proceeding the same procedure was taken as in other sales heretofore made, and that no inference of want of good faith is to be drawn from the selection of the medium through which this notice was given.   The failure of the board to expressly designate the newspaper in which notice of this sale should be published does not invalidate the sale, if in other respects it was legally consummated.   Is it essential that the board or a quorum thereof be present at and personally direct or superintend the sale of public lands?   The language of the constitution (art. IX, sec. 9) is: "The board shall have the *direction, control* and *disposition* of the public land of the state as prescribed by law."   Art. IX, sec. 10, "It shall be the duty of the state board to *provide* for the sale or other disposition of all lands,"

etc. The statute says, " The board may *direct* the sale," etc. The plain import of this language is that the board, in its capacity as a constitutional tribunal, after determining when the land shall be sold, and guarding against the possibility of the same being sold at an inadequate price by fixing a minimum price, and thus having passed upon and determined those matters essential to the due performance of their trust, shall direct, that is order, a sale to be made.

It was clearly not within the contemplation of the framers of the constitution or of the legislature that the duties of the board should involve the performance on its part of the details incident to such sale; but clearly by the act of 1887 providing for a register, it was intended that such officer could be authorized by the board to perform all such acts. Therein it is provided, among other things, that " the state board of land commissioners is authorized to appoint a register of the state board of land commissioners, who is not a member of said board, whose salary shall be two thousand dollars per annum. It shall be the duty of the register, among other things, to keep the minutes of the board and *to perform such other duties concerning the land affairs of the state as the board may direct.*" Laws of 1887, sec. 4, p. 329. If the duty of the board is as contended by respondents, then the board must personally attend every sale of the public land whether held at the capital or in remote counties, however much it may interfere with the executive duties of the members, and regardless of the detriment it may occasion to other state affairs. And since it appears from the evidence that seventy-two sales of public lands occurred between 1885 and 1891, it will readily be seen that the construction contended for would greatly interfere with the efficiency of the executive department.

But we think that the correct construction of the powers and duties of the board does not require the personal presence of the board at the sale. When it has properly exercised its jurisdiction, and done the substantial things that insure a sale for at least a price that in its judgment is fair

and adequate, then the advertising and making the sale in strict conformity with the regulations prescribed by the legislature may be done by the register, and the board, by directing him to perform these duties, in no measure surrenders or delegates its trust functions.

The right of the petitioner to avail itself of the law of 1891, and make full payment or tender the balance of the purchase price, is not open for discussion on this appeal.   On the former hearing that question was passed upon and settled, and is the law of this case.   *Greenwood Cemetery Land Co. v. Routt, supra.*   " When the law governing a case has been once declared by the opinion of an appellate court on a direct appeal or writ of error, such opinion, on the retrial of the same case, upon the same state of facts, is higher authority than the rule of *stare decisis*; it is generally regarded as *res judicata*, so far as the particular action is concerned." *Lee v. Stahl,* 13 Colo. 174, and cases there cited.

We are in full accord with the views of the learned attorney general, so forcibly expressed in his able brief, touching the importance of the trust imposed on the land board, and realize the far-reaching and disastrous results that a reckless exercise or wanton abuse of that trust might entail on one of the most vital interests of the state, and agree with him that only upon the clearest necessity and with the fullest publicity should it dispose of school lands.   But so long as the exercise of the power to sell such lands rests entirely in the discretion of the board, and its procedure complies with the substantial requirements prescribed, however much the court may differ from the board as to the wisdom of its action, until some showing is made that such action has been influenced or affected by fraud or collusion, it cannot interfere.   Upon a careful examination of the record in this case we find no evidence tending to show that the action of the board was other than *bona fide*, or that the sale was not in all respects fairly made.

The sale, therefore, having been legally ordered by the board and conducted in substantial conformity with the stat-

utory requirements, must be sustained, and it appearing from the evidence that in pursuance of such sale the respondents have accepted from the appellee and its assignor upwards of $13,000, and have turned the same into the state treasury, and that the appellee before the commencement of this action offered to pay and tendered to them the balance of the purchase price remaining unpaid, it became and was their duty to accept such tender and execute a patent therefor.

The judgment of the court below is affirmed.

*Affirmed.*