[No. 3973.]

## TWOMBLY v. SMITH.

1. ELECTIONS—POLITICAL PARTIES—COUNTY CENTRAL COMMITTEE—REMOVAL OF CHAIRMAN.

Where the chairman of the county central committee of a political party was elected by the committee, the committee had the power to remove such chairman and elect another. And where after the chairman had called a meeting of the central committee and before they met, another committee, called the executive committee, met and voted to remove the chairman of the central committee, and proceeded to elect another, but the chairman denied their authority and under the instructions of a number of the central committee who met in pursuance of his call, proceeded to call county primaries, but before the primaries were held, a majority of the central committee met and ratified the action of the executive committee in removing the old chairman and electing a new, and directed the new chairman to call primaries for the purpose of choosing delegates to a county convention, *held*, that the convention held by delegates elected at the primaries called by the new chairman was the regular and lawful convention of the party in preference to one held by delegates elected at the primaries called by the old chairman.

2. ELECTIONS—POLITICAL CONVENTIONS—RIVAL DELEGATIONS.

Where two factions of a political party chose delegates to the state convention, but only one of the sets of delegates attended the regular state convention, the other set attending another state convention claiming to represent the same party, as the rights of the rival factions were not adjudicated by the convention, its action in seating the only delegation that claimed seats was not conclusive on the courts as to which faction legally represented the party in the county, and was entitled to the name and emblem on the official ballot.

3. ELECTIONS—OFFICIAL BALLOTS.

There is no provision of the election law which authorizes the preparation of the official ballot in such manner as to permit state and county tickets to be voted separately, each as a whole, under the same or distinctive emblems.

*Upon Review from the District Court of Arapahoe County.*

ACTION commenced in district court by petitioner, to review

the ruling of respondent on the contest between two sets of nominees of the Silver Republican party for the county of Arapahoe. Judgment sustaining this ruling, with the modification that the nominees adjudged by respondent entitled to appear upon the official ballot should be designated separate and apart from the state ticket, so that the state and county tickets can be voted separately.

In 1897 John D. Fleming was regularly selected by the central committee of the Silver Republican party for the county of Arapahoe as the chairman of such committee. At or about the same time, this body selected an executive committee. July 29, 1898, at a meeting of this committee, chairman Fleming was deposed, and H. H. Eddy selected in his place. Two days previous to such action, Fleming had issued a call for the central committee, to meet on the 30th of July, 1898, pursuant to which a large number of the members assembled and directed Mr. Fleming to call the regular county primaries to meet on the 3d of September following, for the purpose of selecting delegates to a county convention, to be holden on the 5th of the same month, to select delegates to the state and congressional conventions, and also delegates to a county convention, for the county of Arapahoe, for the purpose of nominating a county ticket. August 20, 1898, by virtue of a call by chairman Eddy, a meeting of the county central committee was held, at which there was present a majority of the regularly constituted members of this committee, who affirmed the action of the executive committee, in removing chairman Fleming, and appointing chairman Eddy in his stead, and directed the latter to issue a call for primaries for the selection of delegates to a county convention, the purposes of which were the same as that called by Fleming. Both of these conventions were held. The county convention called by Fleming nominated petitioner and his conominees, and the one called by Eddy, the candidates who were ruled by respondent to be the regular nominees of the party for this county, and, also, so adjudged by the district court. The delegates to the state convention chosen under the Fleming

call attended the meeting at Colorado Springs known as the Broad convention, while those selected under the Eddy call attended the one known as the Blood convention. Each of these conventions claimed to be the regular one of the Silver Republican party for the state. In *Whipple v. Broad, ante,* p. 407, the Broad convention was held to be the legal one. The state delegates selected by the Eddy convention did not seek admission to the Broad convention, nor submit their claims to that body.

Mr. JOHN R. SMITH, Mr. GRANT L. HUDSON and Messrs. WARD & WARD, for petitioner.

Messrs. BARTELS & BLOOD, Mr. VICTOR A. ELLIOTT and Messrs. FILLIUS & DAVIS, for respondent.

MR. JUSTICE GABBERT delivered the opinion of the court.

The two questions to be determined in this case, are:

*First.* Which was the regular convention of the party, which incidentally includes a consideration of the regularity of the proceedings terminating in the removal of chairman Fleming and the appointment of chairman Eddy.

*Second.* Did the recognition by the state convention of the Fleming delegation conclusively settle the question as to which was the regular convention in Arapahoe county?

1. Mr. Fleming was appointed chairman of the county central committee by that body, and although the executive committee may not have had power or authority to remove him as such chairman, the central committee, having the power to appoint was vested with authority to remove its appointees, and this governing body of the party having subsequently ratified the action of the executive committee in making such removal, and appointing chairman Eddy, in his stead, the latter, by virtue of this action became the authorized chairman of the central committee, and empowered to perform the duties usually devolving upon the recognized head of such organizations.

At the time when the central committee met at the call of chairman Eddy, and directed a call for primaries for the purpose of choosing delegates to the county convention, the one called by chairman Fleming had not been held, and the committee, duly convened, had the power and authority to rescind or revoke its previous action in regard to matters which had not been consummated; so that the convention held in pursuance of the action of the Eddy faction should be held to be the regular one of the party for the county of Arapahoe, and the persons nominated at this convention adjudged entitled to appear upon the official ballot under the name and emblem of the party, in accordance with the judgment of the district court in this respect, unless the second proposition presented for consideration is conclusive of the question as to which was the regular convention of the party for this county.

2. The convention which met at Colorado Springs, which the Fleming delegation attended, convened for the purpose of making nominations for state officers. The question as to whether the delegation selected by the Eddy faction, or the one selected by the Fleming, was the delegation chosen by the lawful authorities of the party for the county, was not before it, nor determined, because the Eddy delegation did not claim to be entitled to seats in this convention, and merely because the Fleming delegation was admitted to this convention, without contest, in no manner settles or adjudicates the question as to which was the regular convention of the party for this county, which assembled for the purpose of nominating a county ticket.

To what extent a convention of a party for a particular district is a law unto itself, and the result of its action depend upon whether or not it was called in pursuance of the legally constituted authorities of the party for that district, without respect to the action of the state or other convention, recognizing any particular faction of the party, when a contest between factions is heard and determined by such convention, it is not deemed necessary to pass upon. This case is distinguishable from *In re Redmond*, 25 N. Y. Supp. 381, and *Cain v.*

*Page*, 42 S. W. Rep. 336, authorities cited by counsel for petitioner, in support of their position that the recognition by the Broad state convention of the Fleming delegation precludes the court from further inquiry on this subject. In the former case, the question as to which was the regular convention of the party for a specific district less than the state had been determined by the state convention of the party in a contest between rival delegations of different factions for this district, and for that reason, it was held that by such proceedings the party for the state had determined for itself which faction represented the party in that district.

In the latter case there appears to be a special statute by which the governing authority in the county or district in which a convention may be held for the nomination of candidates, is constituted a tribunal to hear and determine contests over such nominations, and a contest between rival candidates having been determined by this body and in the state convention of the party, the question as to whether or not the committee or governing authority which had determined the contest was the legal one of the party for the district in which it acted, having been directly presented and settled by the state convention in the affirmative, it was held that this action on the part of the state convention was conclusive of the question as to which was the regular committee for the district, and the judgment of such committee on the contest before it, therefore, final.

As above stated, no such question is presented in this case for our determination. There has not, in our opinion, been any adjudication by any authority or governing body of the party, in any manner determining which was the regular convention or who were the regularly constituted authorities of the party for the county of Arapahoe, nor does the judgment of this court, in the case of *Whipple v. Broad, supra,* under the circumstances affect the question as to which faction of the party for this county was the one called and held in pursuance of the legally constituted authorities of the party for that district. Without determining the question, directly,

because it is not presented, it may be said that a convention of a party for one district has no authority to determine questions of the character here presented, so as to control nominations by a convention for public officers in another; there is no statute granting such right, nor is our attention called to any rules or regulations of the party under which such power or authority might be exercised. When the regularity of the proceedings of rival conventions making nominations is called in question, the courts should determine that question without respect to the action of any other convention of the same party, which included territory greater than the district in which such nominations were made. To hold otherwise would, in effect, result in delegating to conventions the power to make nominations for public offices in a given district not authorized under the call so to do, to the exclusion of the convention of the party for that district called for that particular purpose. *In re Cowie*, 11 N. Y. Supp. 838.

There is no provision of the election law which authorizes the preparation of the official ballot in such manner as to permit state and county tickets to be voted separately, each as a whole, under the same or distinctive names and emblems.

The judgment of the district court, in holding that the convention held in pursuance of the Eddy call was the legal one of the party for the county of Arapahoe, is affirmed; but its judgment directing that the nominees of that convention appear upon the official ballot so that the state and county tickets may be voted separately, is set aside, and the cause remanded, with directions to sustain the ruling of the respondent.

*Modified and remanded.*

CAMPBELL, C. J., dissenting.

If the sole proposition involved was which of the rival conventions was the regularly constituted convention of the party, and if this was stripped of all other considerations affecting the real question before us, and arising out of what

has occurred after the conventions adjourned, I would not be inclined to review the findings of fact on which its solution would mainly depend, were it not for these subsequent facts, because the evidence on which the findings were made by the trial court was conflicting. But the decision of the highest authority of the party in the state regularly had, and an adjudication of this court in a contest where all interested parties were heard, have conclusively determined for this court that regularity in favor of the Broad wing of the party to which the Fleming faction in Arapahoe county belongs.

Not only this, but the action of the Eddy faction, both before and after our decision was handed down, in voluntarily allying itself with the Blood faction, and in forming a new and hostile party, estops it to claim any right or privilege which has been awarded by the governing body of the party or court to the Broad faction, or the Silver Republican party as it now is. To a demonstration of the soundness of these propositions I address myself.

Political parties have existed so long in this country, and their general methods in calling and holding conventions for selecting nominees for public office are so well understood, as to become matters of judicial cognizance. Were it otherwise, there is in the record enough to enable us to ascertain what these party practices and customs are. The political party whose rights are under consideration has existed in this state since the year 1896. Its organization extends throughout the state, congressional and representative districts, and into many, if not all, of the counties and precincts of the state, and is supplied with the usual party machinery therein. In the nature of such voluntary organizations, there must be some central power or governing body to which all questions of party policy may be, or are to be, referred, and by which all disputes or contests between its contending factions must be settled. The party itself, in one sense, consists of the aggregate of its individual members, but the party organization through which, and which alone, the party acts, is rep-

resented by an organization which is a unit, and this is made up of all its integral parts.

Limiting the discussion (as it should be in the case at bar) to the party in the state, the expression of that unit is the state organization, and the integral parts are designated by names appropriate to the respective subdivisions. If harmony in the party is to prevail, and if its objects are to be realized, there ought to be,—and, in fact, is,—some power within the party itself, connected with its party machinery, having authority to determine all questions of the regularity of conventions, the rights of delegates to attend them, and the validity of the claims of those alleged to be its nominees; and when, in good faith, such a determination is made, the courts cannot review it; for they possess no power to enforce their decrees, if the party authority chooses to disobey. In short, anarchy in the party would ensue, did not some governing body have the power of supreme control in party affairs. To my mind, this proposition is so clear that the statement of it is the best argument in its support.

By general and uniform custom, and very properly, the state organization of a party is recognized as the highest in point of authority in the state, and a state convention represents its supreme voice. The reason for this is apparent. The state convention is made up of delegates who come from the various counties of the state, and in this body, and in no other in the state, are the members of the entire party, from every precinct, represented.

With the utmost respect, and if I may be permitted to say so, the opinion seems to me somewhat ambiguous, as well as inconsistent, when it treats of the nature and extent of the authority of a state convention. In one case it is said that no such question is in the case, and therefore no ruling upon it can be made; while elsewhere is the statement that a convention of a party in one district has no authority to determine questions of the character here considered, and then the opinion proceeds to declare that when the regularity of the proceedings of rival conventions that make nominations is attacked,

the court must determine it without respect to the act of any other convention of the same party which includes territory greater than the district in which such nominations are made, and *In re Cowie*, 11 N. Y. Supp. 838, is cited in support of this ruling.

An examination of this case shows that if any such ruling was, in fact, made, it was *dictum*. The statute in that state, as in this, provides that all certificates of nomination which are in apparent conformity with the provisions of the act shall be deemed valid unless objections thereto shall be made in writing within three days after the filing of the same. Two certificates of nomination were filed,—the one in conformity with the act, the other irregular on its face. The clerk, going behind the face of the certificates, ruled in favor of the latter, but the court reversed him, and declared the former entitled to the place on the official ballot, because, as was said : "No objections having been filed to this certificate, and it being in apparent conformity with the provisions of the act, it would seem that, by operation of law, the nomination was valid, and the county clerk was bound to recognize the person named as the regular nominee of the Republican party for the office."

It is true that a county convention, and a county and state committee of the party had recognized as the nominee in question the one to whom the county clerk made the award, but the court held that there was no authority for going behind the face of the certificate, when no objection thereto had been filed, and upon this point the learned judge said, "I cannot see that any authority is given by the act to the clerk or the court to decide between the claims of rival factions in a political party."

It is apparent, therefore, that this case called for a decision only upon the point that where no objection was made to a certificate of nomination apparently regular upon its face, neither the court nor the filing officer can go behind it, but the latter should certify it for printing upon the official ballot. In this regard the doctrine is in harmony with *People v. District Court*, 18 Colo. 26. Had no objection been made

to the certificate, as the law provides it may, and the controversy over it had reached the courts, if it should then appear that the state convention of the party in such circumstances determined the regularity of the rival contentions, quite another question would arise, which was not present in that case.

But if it be supposed that the *Cowie* case justifies the conclusion of this court, I do not think its doctrine good law, and in subsequent decisions of the supreme court of New York it has been expressly disregarded. In *In re Redmond*, 25 N. Y. Supp. 381, the syllabus, fairly stating the point decided, is as follows: "A determination by the state convention of a party, on a contest between two delegations, as to the regularity of the conventions by which they were nominated, will be treated by the courts as conclusive." The case is on all fours with the one before us, and the thought and language of the learned judge who wrote the opinion are so perspicuous that the liberty is taken of quoting literally from it:

"The act, in a variety of ways, recognizes what the experience of all teaches,—that under our system of government the affairs of the state are conducted through the medium of the representatives of political parties, and that, of necessity, such parties must, to a certain extent, provide for their conduct and management certain rules and regulations, which are not inaptly termed 'party machinery.' That such machinery is frequently employed to accomplish personal and factional ends cannot be denied. That it is sometimes used to crush any expression of sentiment by, and to defeat the desires of, a large majority of the political party it is supposed to represent, is undoubtedly true. But, nevertheless, the party cannot exist without its machinery, and if that machinery is used oppressively, and for improper purposes, the right and the power to remedy the evil undoubtedly reside in the party itself; and so it will be found that, in the 50th section of the act in question, provision is made for the conduct of political parties by means of conventions and primaries, and by such rules and regulations as those bodies may adopt.

But, independent of said act, it is a fact so well known, and of such long-continued existence, as to entitle the same to judicial recognition, that political parties have their territorial divisions, and that while each division is, within certain limitations, a law unto itself, so far as the particular territory it assumes to represent is concerned, yet, by party usage, each of said divisions owes and yields allegiance to some higher power. To illustrate, it frequently happens that a county committee prescribes times and regulations for the holding of primary meetings, and party usage requires that the rules thus prescribed shall be observed. In the same manner, a state convention, like our state legislature, is the sole judge of the election of its own members; and when it has once passed judgment upon conflicting claims, where questions of regularity only are concerned, it seems to me that its determination should be accepted as final. Such determination may be unjust, it may be in direct violation of the equities of any given case, and, as contended by counsel, in theory it may be right and proper to disregard such an adjudication, and to insist that no party division may exercise any supervisory control over any smaller division. But, if such a theory were put in practice, it would be subversive of party discipline, and would reduce political parties to mere associations of independent and irresponsible mobs. No such rule as the one contended for obtains in any voluntary organization, but, on the contrary, the very term ' organization ' implies a recognition of order, and an obedience to duly-constituted authority. These observations lead, of necessity, to the conclusion that where a person allies himself with a political party he tacitly acknowledges allegiance to all the rules and regulations of that party, as enunciated or expressed by what party usage recognizes as the supreme or superior authority of the organization. The recognition of this principle does not compel one to follow blindly the dictates of party, nor to vote for incompetent or unfit candidates, for he still possesses the inalienable right of severing, either permanently or temporarily, his party relations. Neither does it prevent any

person, with a sufficient number of followers who desires his election to any office, from being a candidate for that office in the manner provided by the statute.   But he cannot claim to be the nominee or representative of a political party unless he has been first regularly nominated by that party, and what constitutes regularity depends, as I think has been shown, upon the usages of the party itself, and not upon any rules or regulations which may seem just and proper to courts or judges."

The concluding part of the opinion, so directly apt, as well as so squarely in point here, is:

"It follows that the applicant, having received his nomination at the hands of a convention whose claims to regularity have been submitted to the supreme authority within the party in the state, and which have by that body been declared unfounded, cannot be regarded as a regular nominee of his party, and is consequently not entitled to have his name printed upon the official Democratic ballot."

*In re Pollard,* ibid. 385, was a case in which the court recognized the authority of a state convention on a question like that before us, even in the face of an adverse previous decision of the court, and the following language of the opinion is significant:

"When this controversy first required a judicial determination, it became necessary to decide it upon such facts as were established by affidavits, unaided by the action of any convention of the party; and, as those facts were thus made to appear, I had no difficulty in reaching the conclusion before mentioned.   I am still satisfied that such conclusion was justified, and should now adopt it without hesitation, were it not for the fact that a different one has been so uniformly reached by the party conventions.   In determining a question similar to this which arose in Monroe county (*In re Redmond,* 25 N. Y. Supp. 381), where the question of regularity had been passed upon by the state convention of the Democratic party, I have just held that the action of that body must be regarded as conclusive, and I see no reason why the same rule should

not obtain in this case.   The only difference is that here the state organization did not pass upon the question until after it had been determined judicially, but nevertheless both factions submitted their claims to that body; and, for the reasons stated in the opinion in the *Redmond* case, I think the defeated party must now acquiesce in its decision.   I am aware that this view is at variance with the one expressed by me upon the former hearing, and it likewise appears to be in conflict with that entertained by Justice Bradley in his opinion in this same matter; but, so far as any contrary view appears in my own opinion, it will be found to be merely the expression of an opinion which was not called for by the facts of the case, and it is one which, upon more deliberate reflection, I am disposed to modify.   The conflict between the views here expressed and those of Justice Bradley is more apparent than real, inasmuch as it now appears that since his decision was made the regularity of the Mongin faction has been passed upon by several additional conventions, and that the opposing faction has so far acquiesced in their decisions as to omit in more than one instance to make any further demand for recognition.   I still think, as already stated, that the title to regularity of the Patterson faction was pretty clearly established upon the original hearing, and that it would, in view of the provision of the statute which authorizes this proceeding, have been no more than courteous for the party conventions to have adopted the decision of the general term, which was deliberately made after a careful and impartial hearing, but there is no way in which they can be compelled to do so; and consequently it seems to me that the only rule for courts and judges to adopt in this and all other similar contests is that they will interfere only in cases where there has been no adjudication of the question of regularity by some division of the party which is conceded to be superior in point of authority to the one in which the contention arose, provided, of course, that the question of good faith in the making of such adjudication is not involved.   The adoption of a different rule will inevitably tend to bring party organizations and the

courts into unseemly conflicts over questions which are peculiarly within the cognizance of the former tribunals,—a result which most certainly ought, if possible, to be avoided."

From the opinion in *Cain v. Page*, 42 S. W. Rep. (Ky.) 336, it does appear that there was a special statute conferring upon the committee, or governing authority, of a *county* or *district* in which nominations were made, the power to determine its nominees in case of contest. A contest arose over nominations by a county convention. It was settled by the county committee, and the defeated nominee appealed to the state committee and state convention of the party, and both the committee and the state convention affirmed the ruling of the county committee. Application was then made to the court for relief, and the court of appeals of Kentucky said :

. "It seems to us that, whatever difficulties might have otherwise been found in the way of determining this question, they have been removed by the unequivocal action of the supreme authority of the party in the state convention assembled. * * * We hold this action of the state convention to be a conclusive recognition of the Oneal committee as the governing authority of the Democratic party in the district in question, beyond which action and recognition the courts cannot go. * * * The voice of that convention was the very voice of the Democratic party. The word of the convention is the law of the party, and courts cannot look beyond this word or this law, because there is no other. When counsel questions the authority of the state convention in party organization, it is as if the Mohammedan should doubt the Koran, or a Christian the Book of Books ! "

Now, it will be observed that the statute gave the power to the county, not to the state, committee, or state convention, to determine the contest. Had the court rested its decision upon the ground that the act of the county convention was conclusive, it might be said that the special act, and not general principles of law, controlled. But the court based its ruling upon the fact that the state convention, being the supreme authority of the party—not made so by statute, but

being so in the very nature of party organizations—had settled the case. The very fact that the court recognized the authority of the state convention to review the determination of the county committee, when there was no statute allowing it, is equivalent directly to a holding that the state convention's decision of party policy and as to party nominees applies to all subordinate divisions of the party and to their nominees. So that all these cases are squarely in point, and their reasoning effectually disposes of the pending controversy against respondent. I might well conclude this discussion here, but there are other reasons for my conclusion on the merits, which ought to be stated.

But it is said that there was no contest before the state convention for decision. Referring again to the opinion, it is said that the state convention met to make nominations of state officers, and that the regularity of the Eddy and Fleming conventions was not before it, or, in fact, determined, because the Eddy delegation did not claim to be entitled to seats in the convention, and therefore there was no contest which the convention was called upon to settle.

Whether we are to conclude from this statement that the writer of the opinion would concede that if a contest had been waged in the state convention its decision would be controlling here, is somewhat difficult to determine; for, as we have seen elsewhere in the opinion, he apparently concludes that the action of the state convention would be immaterial.

But in legal effect, as I now proceed to show, there was a contest which the state convention decided. It is true that on the day the state convention met the Eddy delegation did not appear and claim seats therein; but three or four days before that, in accordance with the party usage, a list of the names of the delegates selected by the Eddy convention was filed with Mr. Broad, as chairman of the state committee, and their credentials as delegates therefrom were duly certified to the state convention, through its chairman, by the chairman and secretary of the nominating convention, and also by

the chairman and secretary of the county central committee. In this paper (a copy of which is in the records of that case) these delegates claim to be the lawfully elected and duly constituted delegates from Arapahoe county to the Silver Republican state convention at Colorado Springs. The Fleming delegates also filed their credentials with chairman Broad, in which they claimed that they were the lawfully elected delegates. Both lists and credentials were regular upon their face, but both lists of delegates were not entitled to sit. The filing of these two lists with the proper officer was the initiation of a contest in the way which accorded with the customs of the party. The Eddy filing was not withdrawn, though it was not, as a matter of fact, followed up. But the .fact that the Eddy delegates did not personally appear on the day the convention met does not operate as a dismissal of the contest, or prevent the state convention from passing upon the rights of the rival claimants, or disqualify the Fleming delegates from having their standing defined. It is as if one party to a suit, after he was duly in court, suffered judgment to go by default. In such a case he could not claim that the court was without jurisdiction to determine the matter in litigation merely because he did not choose to exercise his legal rights in presenting evidence in support of his contention.

Upon the day fixed for the convention the Eddy delegates chose to participate in a rival state convention, and no longer recognized Broad as the chairman of the state central committee after his attempted removal by Towne; but the decision of this court has stamped with the approval of regularity the convention called to order by Broad, and held his attempted removal by Towne inoperative; and so in failing to select for their participation the only genuine convention of the party, and in choosing the one which they supposed at the time to be the regular convention, but which has since been judicially determined not to be, the Eddy delegates acted at their peril, and must take the consequences of their own mistake.

2. But if there was no contest pending between these rival

delegations which the state convention decided, still the adjudication by this court in the case of *Whipple v. Broad, ante,* p. 407, is conclusive of this controversy against the Eddy convention.   In holding the Broad state convention to be the regular convention of the party, this was equivalent to an adjudication that the Fleming county convention was the regular convention of the party in Arapahoe county, for the latter elected the delegates to the former.   The Broad state convention, being the regular one, all the authorities agree that, in the absence of fraud or bad faith, which is not shown, its action in passing upon the credentials of delegates is conclusive.   The admission of the Fleming delegation from Arapahoe county necessarily established the regularity of the so-called Fleming county convention.   That the court had the power to determine the controversy between the rival state organizations is conceded, because there was no higher authority in the party to determine that question; and as there were two rival state organizations contending for this distinction, it was necessary for the court to determine which was genuine.

3. In the foregoing discussion nothing has been said about that provision of our law pertaining to the emblem on the official ballot.   The decisions of the New York courts were made under statutes containing, so far as we are advised, no similar provisions.   When, however, we come to consider our statute, the vice in the majority holding is the more apparent.   Section 18 of the election act of 1894 provides, *inter alia*, that when a political party has selected an emblem, the name of the party, together with the emblem, shall be placed in a line at the top of the ballot with a blank square opposite thereto in which a cross mark may be placed by the voter. All such party designations and emblems are to be placed in parallel lines, one under another at the top of the ballot above the list of candidates.   For one who wishes to vote a straight ticket the manner of doing so is for him to make a cross mark in any such square following the party name and emblem, and that mark shall indicate and be counted as a vote for

each and every candidate on the ballot nominated by the party after whose name and emblem the mark is so placed. It is also provided that no two sets of nominations shall use or have the same device.

This entire discussion might well have been premised with the statement that under the Australian ballot act the tribunals thereby constituted for hearing these election controversies are given the power to determine questions of regularity of party conventions and the ascertainment of their nominees because the counties are charged with the duty of preparing and printing the official ballots which must contain the nominees of the different parties, and the emblems selected by them. The public officers, therefore, in case of rival nominees claiming the same rights, must be advised by some authoritative tribunal what nominees are entitled to the party names and emblems. Further than it becomes necessary in preparing the official ballots, the courts, under the act, do not inquire into the doings of political parties.

Now it is admitted that since the rival county conventions in Arapahoe county were held, a decision of this court made the Broad faction of the state Silver Republican party the regular party, and its state ticket, and no other, became thereby entitled to the use of the party name and emblem. To obtain a place on the official ballot, and to retain standing as a political party, the leaders of the rival, or Blood, faction then, by petition or certificate, organized a new and entirely different political party which they called the Teller Silver Republican party, and chose for it an appropriate emblem, both the new name and the new emblem differing from that of the prior party to which this faction belonged.

As its nominees for state offices they placed on their certificate of nomination the same names that were on the former ticket. Similar action was taken by the leaders of all the subordinate divisions of the Blood faction of the old party, including the county organization of Arapahoe county. The new nominees, or the nominees of the new party thus organized in the county, were the same as those of that faction of the

old party to which they belonged. A new party was thus brought into being, just as distinct from, and as antagonistic to, the Silver Republican party, as an organization, as the latter is to any other party. The new was a unit in opposing the Silver Republican party, and its continuity extended from state to precinct tickets.

It is to be observed that the contention of the Eddy nominees is that because they were nominated by a convention of the Silver Republican party which at the time was the regular convention, and that they once owed allegiance to this party, notwithstanding the fact that they now disclaim their former party allegiance and have become members of a rival political organization having a different name and emblem and different nominees, they are entitled still to be considered the nominees of their former party, and that they have the right to its name and emblem, as against another list of nominees who claim allegiance to the old party, and are recognized as the nominees of the latter by its highest authority in the state.

It should be borne in mind that, by reason of our previous decision, the Eddy party has not, as already stated, lost its place on the official ballot because its nominees are now the nominees of a new party having a new emblem, and the electors who desire to vote for it as a straight ticket are protected in that right. The evident meaning of the statute was that no name or emblem should do duty for any two sets of nominations; that under a party name and emblem there should not be nominees of one party for state officers, and nominees of another party on the congressional or senatorial, county or precinct, ticket of the former. But the ruling of this court accomplishes just such inconsistent and absurd result; for having already judicially determined that the Broad state ticket was entitled to the name and emblem of the Silver Republican party, and in the case at bar having determined that the county nominees of the Teller Silver Republican party are entitled to the use of the same name and emblem, we have the curious result that if an elector desires to vote a straight Silver Republican ticket, and places a cross mark

opposite that name and emblem, instead of accomplishing his purpose his ballot is counted for his party's state ticket, and for a county ticket antagonistic thereto, and one for which he did not intend to vote.

Not only is there nothing in the statute that requires such a construction as my associates have given, but it is in the face of the letter of the act. The single fact, were there nothing else in the case, that the Eddy nominees and their sponsors have withdrawn from the Silver Republican party and have repudiated all connection with it, that they refuse to recognize the lawfully constituted and governing body of the party, and have voluntarily united their fortunes with a new and antagonistic party under a new name and emblem, is enough, in good conscience and equity, to estop them now from claiming any right or privilege which otherwise they might have had to the use of their former party name and emblem; especially in view of the fact that if their claim is recognized it confessedly will result in confusion, will deprive the *bona fide* members of the Silver Republican party of the right they have under the law of voting a straight party ticket through the medium of an emblem, and can operate only as a snare and a fraud upon unsuspecting voters.

We are not without authority in our own state upon the direct question we have been considering. *Smith v. Harris*, 18 Colo. 274, was a contested election case, and one of the causes of contest there considered was the refusal by the county clerk to print the contestor's name upon the " Miner " ticket. There, as here, there were two factions of the Democratic party, each holding a separate state convention, and the split extended to the local party in El Paso county, where two county conventions were held. Smith, being the nominee for county judge of the Democratic party in that county, insisted that his name should have been printed upon the official ballot as the nominee of both factions of the party, so as to have the use of both emblems. In speaking to the point this court says:

" It appears that there were two factions of the Democratic

party, and that each held a separate state convention; but it nowhere appears which wing or faction of the Democratic Party this county convention represented. *Unless the convention represented the party that selected the miner as the emblem for the state ticket its nominees were not entitled to have their names printed on that ticket. The contestor had no right to have his name on more than one ticket by reason of his nomination by that convention.*"

This is a direct and express adjudication to the effect that where there are two factions in a party, or where there are two distinct political parties, the nominees of one faction or party are not entitled to have their names printed on the ticket of the rival faction or party, or to have the use or benefit of its emblem. This decision has been called to our attention, but it has been wholly disregarded. See, also, *Williams v. Lewis*, 54 Pac. Rep. (Idaho) 619, which, in principle, is in harmony with my position.

The opinion of the learned district judge who tried the case at bar is brought up in the record, and a careful examination of it satisfies me that he would not have entered the judgment he did had he not supposed that the state and county tickets might have been so printed upon the official ballot as to have avoided the confusion which must ensue should the ballots be printed as they ordinarily have been in this state. Speaking to this point, he says:

"Counsel urges, however, that if a decision regarding the county conventions be not in conformity and in unity with the policy and the standing of the state convention that a condition of inconsistency would arise that would tend to defraud and impose upon the voters. In support of this it is urged that the nominees of the county convention must find their place under the list of nominees of the state convention. I have examined the law on this point, and so far as I can ascertain I am of the opinion that it is not the law; that the nominees of a county convention, if they be inconsistent in their name and emblem or in the policy, should be placed under the nominees of the state ticket; that in making up

the ticket the state nomination should be placed separate and apart with the proper name and emblem, and the county ticket should be placed separate and apart with the name and emblem, and that those desiring to vote a state ticket can only vote a state ticket so far as the list of nominations relating to any particular division of the state is concerned; and that it is the duty of the clerk to so arrange the ballot that the voters will not be deceived by placing what may be called the Teller Silver Republican under what we may term the Broad Silver Republican."

This clearly indicates that the learned judge supposed that he was providing the proper safeguards to avoid confusion and deception. Just how the ballots can be prepared to prevent this confusion, we are not advised, except as the quoted language imparts that information, because the decree itself is not before us, in which it may be reasonably presumed ample directions are made in this particular.

If I correctly understand the ruling below, I do not agree with the construction of the provisions of the statute with reference to the arrangement of the tickets on the official ballot which the district judge apparently has made, but it is as fully warranted by, and is entirely harmonious with, his construction of other portions of the law, approved by this court, which allows a ticket to be printed on the official ballot which is composed of irreconcilable and antagonistic elements, and if the construction which they have made upon this point is tenable, in all fairness and justice to the voters and the rights of the Fleming nominees, it should have been supplemented by carrying into effect the arrangements which the district judge thought he was making to protect the rights of the electors of the Silver Republican party who desired to cast a straight ticket, that is, to vote for the state, congressional, senatorial, and county and precinct nominees of his party by placing a cross mark following the name and emblem of his party at the top of the official ballot. But this court has affirmed the decision below touching the regularity of the respective conventions, and entirely set aside that portion

which was intended to make it consistent with the positive directions of the Australian ballot act.

For all the foregoing reasons I am clearly of the opinion that the judgment should be ·reversed, and that petitioner should have judgment in accordance with the prayer of his petition.