[No. 4747.]

THE PEOPLE EX REL. LOWRY ET AL. v. THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT, MULLINS AS JUDGE, ET AL.

1. **Political Parties—State Central Committees—State Conventions—Party Name—Jurisdiction.**

Under the act, Session Laws 1901, page 169, the state central committee of a political party, or the state convention while in session, has exclusive jurisdiction to determine all controversies between factions of the same party as to which is the regular organization and entitled to the party name and to make and file nominations for office under the party name within any district county or city of the state.

2. **Same—Constitutional Law.**

The act, Session Laws 1901, page 169, conferring upon the state central committees of political parties jurisdiction to hear and determine factional controversies as to the regularity of the organization of the party within any district, county or city of the state, is not in violation of section 11 article 6 of the constitution on the grounds that it divests the district courts of jurisdiction in such causes and confers it upon another tribunal, as the district courts have no such jurisdiction in the absence of a statute conferring it.

3. **Political Parties—State Committees—Jurisdiction—Factional Controversies.**

Where there exists a state central committee of a political party, factional disputes of subordinate divisions of the party must be referred to such committee, and the courts have no jurisdiction in such factional and internal disputes between members of the same party although the committee may not have passed thereon.

4. **Same—Filing Roll of Membership of Committee—Estoppel.**

The filing of a roll of members of the state central committee of a political party with the secretary of state as required by section 2 of the act, Session Laws 1901, page 169, is not a condition precedent to the exercise by the committee of the

power to determine factional disputes in subordinate divisions of the party, and in the case at bar it appearing that the faction now challenging the power of the committee upon that ground has heretofore invoked the jurisdiction of the committee to act upon the controversy, it is estopped to deny the committee's authority.

5. **Political Parties—Factional Disputes—Jurisdiction—Prohibition.**

Where a district court is proceeding without jurisdiction to determine a factional dispute between members of the same political party, and the parties objecting to such proceeding have no speedy and adequate remedy at law, on petition to the supreme court a writ of prohibition will issue to prevent the court from taking any further action in the matter except to dismiss the proceedings.

### Petition for Writ of Prohibition.

Mr. C. W. WATERMAN and Mr. R. D. THOMPSON, for petitioners.

Mr. THOMAS WARD, Jr., for respondents.

*Per Curiam.*—Acting in pursuance of the authority conferred, and in performance of the duty imposed, by article 20 of the constitution upon the municipality of the city and county of Denver, its city council called an election of the qualified electors thereof for the 8th day of December, 1903, for the purpose of selecting members of a charter convention to frame its charter. To nominate, and submit at this election, a ticket, two conventions were called and held, both purporting to represent the Republican party of the city and county of Denver, and each convention, in accordance with the call, selected a list of nominees for members of such charter convention, and, as the Australian ballot act requires, its presiding officers certified a list of the nominees for filing with the clerk and *ex officio* recorder of the city and county of Denver, claiming that their respective list of

names should be printed upon the official ballot as the ticket and nominees of the Republican party. One of these lists of nominees we shall, for purposes of convenience, designate as the Lowry, the other as the Garwood, ticket, from the names of the two chairmen of the contending city and county central committees.

To each list of nominees, so certified and filed, a protest was lodged with the clerk by the chairman of the opposing faction of the party, and, after a hearing had in accordance with the provisions of the act prescribing that procedure, that officer decided that the Lowry ticket was the genuine Republican ticket and entitled to be printed as such upon the official ballot, and that the Garwood ticket had no right or title to its claim of legitimacy. Thereupon a petition was filed in the district court of the city and county of Denver by Mr. Garwood, in behalf of the city and county central committee of which he was chairman, and claiming also to represent the list of nominees certified by the officers of the Garwood convention, in which he asked for a review of the finding and judgment of the city and county clerk, demanding *inter alia,* that the court restrain that officer from printing upon the official ballot the Lowry nominees and ticket as that of the Republican party, and in lieu thereof, and as representing the Republican party of said municipality, that he should place thereon the nominees of the Garwood convention. To this petition the clerk in his official capacity was made the sole respondent, and he has taken no further action in the premises. At the time designated by the clerk for the hearing of the petition, Mr. Lowry, as the representative of the county central committee of which he is the chairman, and in behalf of the nominees of the Lowry convention, and those nominees themselves, appeared in the district

court and asked leave to file a petition of intervention setting up that such nominees are the representatives of the Republican party of the municipality, that their regularity and right to represent the party had been recognized and determined by a former state convention of the party, and its state central committee, and that they are now entitled to have their names printed on the official ballot as such, and at the same time the jurisdiction of the district court to entertain the proceedings was challenged.

Before the institution of proceedings in the district court, a special meeting of the Republican state central committee was called—but it did not meet till after such proceedings were begun—for the purpose of again passing upon, and finally settling, and it did at such meeting pass upon, the controversy between the Lowry and Garwood committees, and again made a determination to the effect that the Lowry nominees were the nominees of the Republican party of the city and county of Denver. After the petition of intervention was filed, but before final issues were joined, leave was asked for and granted intervenors to appear as respondents and file a supplemental petition of intervention, in which were set forth the findings of the state central committee made after the original petition of intervention was filed.

Time was asked for and given to petitioner in the district court to file an answer to the petitions of intervention, but before the time for filing the same expired, intervenors and respondents below brought their original proceeding in prohibition herein for the purpose of restraining further action by the district court in the proceedings there pending upon the ground that it has not jurisdiction to determine the controversy before it.

From the foregoing statement it is apparent that

two questions only are presented for decision: First, and most important, Have the courts of this state, under the statutes now in force, jurisdiction to determine for the minor, or subordinate, divisions of a political party, controversies concerning the regularity of their organizations and to settle disputes existing between factions or divisions of the same party, including the right to the use of the party name? and, second, if they have not, whether the petitioner has a plain, speedy and adequate remedy at law?

1.   Prior to the year 1897, under the Australian ballot act, the courts of this state were not clothed with power to determine which of two rival conventions, or party organizations, was entitled to act for a political party.—*People v. District Court,* 18 Colo. 26; *People ex rel. v. McGaffey,* 23 Colo. 156.

In 1897, however, our general assembly amended section 13 of the Australian ballot act, and thereunder the courts assumed jurisdiction to settle, and did settle, party disputes of the character now before us.   Though their authority to determine such questions was not expressly challenged, still a practical construction was given to the amendment of 1897 that the courts would pass upon factional disputes. —*Spencer v. Maloney,* 28 Colo. 38, 47.

In the opinion in this case was an intimation that the judiciary ought not to be clothed with, or exercise, power of this kind, but that the legislature should provide some special tribunal for the settlement of the internal disputes of a political party. Evidently acting upon that suggestion, our general assembly in 1901 (Sess. Laws 1901, 169) passed the following act:

"Section 1.   The state central committee of any political party in this state shall have full power to pass upon and determine all controversies concerning the regularity of the organization of that party

within and for any congressional, judicial, senatorial or representative district, or county, or city, in this state, and also concerning the right to the use of the party name, and may make such rules governing the method of passing upon and determining such controversies as it may deem best, unless such rules shall have been theretofore provided by the state convention of such party, and all such determinations upon the part of the state central committee shall be final: Provided, however, That from the time the state convention of such party convenes until the time of its final adjournment, such state convention shall have all the powers above given to the state central committee, but not otherwise; and, Provided, further, That the state convention of such party may provide rules that shall govern the state central committee in the exercise of the powers herein conferred upon such committee.

"Sec. 2. Within ten days after the adjournment of the State Convention of any political party at which a state central committee is selected, the Chairman and Secretary of said convention shall, under oath, file with the Secretary of the State a full and complete roll of the membership of said State Central Committee."

It is upon this act that petitioners in this proceeding base their claim that the courts are thereby, by necessary implication, deprived of the jurisdiction which theretofore they exercised under the amended act of 1897. That the state central committee of a political party, or the state convention, as the case may be, is now the sole tribunal to determine such controversies as is here presented is, to our mind, clear beyond all doubt, and, as a necessary sequence, the courts do not have concurrent jurisdiction in the premises. In *Twombly v. Smith,* 25 Colo. 425, the comments of Mr. Justice Gabbert on *In re*

*Redmond,* 25 N. Y. Supp. 381 and *Cain v. Page,* 42 S. W. Rep. 336, show that, had such a statute as the one of 1901 been then in force here, these cases in which is upheld the authority of the state committee of a party to settle factional disputes, would have been followed.    The same doctrine is announced in *In re Pollard,* 25 N. Y. Supp. 385.

One of the counsel for respondents herein attacks the statute as unconstitutional, if its construction be that jurisdiction to hear and determine questions of this character is thereby withdrawn from the district courts.    He argues that since section 11 of article 6 of the constitution gives to the district courts original jurisdiction of all causes at law and in equity, the general assembly may not divest the same and confer any portion of it upon any other tribunal.

To the contrary is our holding in the 18th and 23d Colorado reports, *supra,* so far as it affects political controversies.    The fallacy of the argument consists in the assumption that a political contro-versy like that now before us is a case cognizable at law or in equity.    It is not of that character.    It is purely political—one peculiarly within the province of political parties to determine for themselves.    In the absence of a statute conferring such power upon the courts they do not possess it as incident to, or embraced within, the jurisdiction to determine all "causes at law or in equity."

This conclusion is further evident from section 11 of article 7 of the constitution wherein the general assembly is given authority to pass laws to se-cure the purity of elections and guard against abuses of the elective franchise, and the act before us, if it needs any constitutional support, may safely rest upon this section.

Another counsel for respondents concedes that the statute is constitutional, but seeks to evade its pro-

visions by attempting to raise an issue of fact in the court below in which, if not restrained, he pro- poses, by answer to the petitions of intervention— a copy of which has been submitted for our inspec- tion—to allege that there never has been a meeting of the state committee to determine the controversy, and that until such meeting is held, and the proper action taken, courts have jurisdiction. For the pur- poses of the present case, it may be assumed that such answer has been filed, but it cannot avail re- spondents, for in their petition in the district court they allege, as they were obliged to do in support of their claim of regularity, that there is a state central committee of the Republican party organized and existing in this state. That being so, it was respondents' duty to submit their controversy to the only tribunal having power to decide it. And if the opposing factions disregard the only remedy they have for settling such party differences, they may not be heard by the courts. Having, therefore, as- serted that there is such a state committee in exist- ence, the very allegation of that fact itself conclu- sively discloses lack of jurisdiction of the court, and petitioners there should at once have been relegated to that committee for a settlement of the controversy in which they were engaged. They cannot there- after, by any subsequent pleading, raise an issue of fact which would give jurisdiction to the court. In other words, where there exists a state central com- mittee of a political party, even though it may not have passed upon factional disputes of subordinate divisions of the party, the provisions of the statute cannot be ignored and a resort to the courts sanc- tioned, when internal disputes arise between mem- bers of the same political party, but it is the duty of the faction or factions desiring a determination of the disputes to call upon the state committee to act.

But it is said that it nowhere appears in the pleadings in the district court, or herein, that the chairman and secretary of the state convention filed with the secretary of state the roll contemplated by section 2 of the act, and that until such filing is made, the state central committee has no power to determine a controversy of this sort. As we understand it, therefore, the contention of counsel that the state committee has not met and determined this controversy is not that it has not assumed to do so, but because no filing of the roll of members was made, such meeting and its transactions are not binding. Even if the filing was neglected, its omission does not confer, or restore, the jurisdiction of the courts. The most that could legitimately be claimed is that, until such filing is made, the power of the state central committee is in abeyance. But a more satisfactory answer is that the statute does not purport to make such filing a condition precedent to the exercise by the state committee of the power to determine a factional controversy. The object of the second section evidently was to make a public record of the membership of the committee for purposes of evidence, and there is no express provision, nor is there any implication, that such filing must first be had before the committee can exercise the power delegated to it by the first section. Besides, the respondents in this proceeding (petitioners below) knew the membership of this committee, and made an allegation to that effect in their petition below, and the record elsewhere shows that the Garwood committee itself has heretofore invoked the jurisdiction of the committee to pass upon its claim to regularity, and in response to its appeal recognition was withheld from it and given to the Lowry committee. If for no other reason, therefore, the respondents

here would be estopped to make any such claim as is implied in this contention.

For an additional reason this position of respondents is not sound. Such neglect to file would go only to the regularity of the proceedings of the state central committee, and not to its jurisdiction to act. The state committee having jurisdiction to act and to prescribe rules and regulations for the determination of such contests, may rightfully determine not only the question of its jurisdiction but of its proceedings under the rules theretofore prescribed for such matters, and it would be the duty of the party complaining of such want of regularity to apply to the committee itself for relief, and not to the courts to exercise a jurisdiction which is exclusively possessed by another tribunal, and whose determination is expressly made final.

2. It follows that the district court had not jurisdiction of the subject-matter of the controversy it was assuming to pass upon; and unless petitioners here (respondents below) have a clear, speedy and adequate remedy at law, the writ of prohibition should go. There is much force in the argument of counsel for petitioners here that no remedy at law can be speedy, full and adequate unless it exists as a matter of right. Under the Australian ballot act, if the district court proceeds to final judgment, an appeal from, or writ of error to, such judgment can be reviewed only at the discretion of the supreme court, and whether or not that discretion would be exercised could be determined only when the same was invoked.

Other considerations of much weight, also, are that the special election will be held on the 8th day of December. This petition was filed on the 20th of November. It is apparent from an inspection of the pleadings below and from a statement made by counsel for respondents here upon the oral argument as

to further issues they intend to raise, that a number of questions of fact would have to be investigated by the trial court if it is permitted further to proceed, in order to determine the controversy, and that such trial might delay decision until it was too late for the parties to have their rights determined until after the election.

In view of these considerations—that the court clearly has not jurisdiction, and that petitioners here have no speedy or adequate remedy at law, the writ of prohibition will be issued restraining the district court from taking any further action in the proceeding before it other than to enter an order of dismissal.

We close the discussion by saying that the general assembly exhibited wisdom and a regard for the interests of the judiciary in passing this statute by which members of the same political body are required to submit their controversies to the highest constituted authority of the party in the state. It relieves the courts of a class of litigation which should never be imposed on them, and confers the power, and places the responsibility for its exercise, upon the political parties, where it properly belongs.

The writ is granted.