[No. 6194.]

## THE PEOPLE VS. HARD LAND COMPANY.

1.　NOTICE—*False but Not Misleading*—A statement in the advertisement of the sale of public lands which though false can mislead no one, will be disregarded—(267).

2.　EVIDENCE—*Presumptions*—It is presumed until the contrary appears that public officers acting officially perform their duties and observe the law—(267, 268).

3.　STATE LAND BOARD—*Evidence of Their Action*—The action of the state land board in directing a sale of public school lands to be made at a place other than the state capital, as permitted by Secs. 12, 15 of the Act of April 2, 1887 (Laws 1887, 328), need not be made matter of record—(266).

The fact that the board approved the sale, though made at a distance from the state capital, and issued a certificate of purchase thereon, was held conclusive that the sale was directed to be made as it was in fact made—(266).

4. ——Sale of School Lands by County Superintendent— The sale of school lands, ordered by the State Board of Land Commissioners, and advertised and made by the County Superintendent of Schools, merely as auctioneer, and professing to act for and by authority of the state board, was sustained, no fraud, collusion or sacrifice of the land appearing, though, so far as appeared, no member of the board was present thereat—(268).

5. ——Sale of Irregular Parcels—The provision of the statute, Act of April 2, 1887 (Laws 1887, 328, Sec. 14) that all sales of state lands shall be made "in legal subdivisions of not more than 160 acres" has no application to the sale of an irregular parcel lying in two different subdivisions, not exceeding five acres in area—(268, 269).

6. Subdivision Into Lots and Blocks—Sec. 13 of the Statute cited is permissive merely—(268).

7. ——Sale Without Survey—A state patent will not be annulled merely because the sale of the lands was made without a survey, where there is no evidence that a survey was necessary, or that the area was greater than that for which it was sold—(269).

The State Board should survey the public lands before the sale thereof, wherever this is necessary; but they have a discretion in the premises—(269).

8. EVIDENCE—Action of Executive Boards—Where no statute requires it the action of a board need not be evidenced by record —(266).

9. JUDICIAL ACTION—Grounds Of—A court can act only upon what is alleged and proven. They are not at liberty to go out of the record and indulge in speculation—(269, 270).

*Error to Pueblo District Court*—HON. JOHN H. VOORHEES, Judge.

HON. WILLIAM H. DICKSON, attorney general, HON. BENJAMIN GRIFFITH, attorney general, Mr. CHARLES L. DICKERSON, Mr. ROY E. DICKERSON and Mr. GEO. C. MANLEY for the people.

Messrs. McCORKLE & McCORKLE and Mr. JAMES
H. TELLER for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the
court.

On July 9, 1887, G. H. Hard purchased from the
state, at public auction, certain school land in Pueblo
County, consisting of five acres, more or less, within
certain defined boundaries, for $7,950. A certificate
of purchase was issued, entitling the purchaser to a
patent for the land upon payment of a balance of the
purchase money with interest. The payment was made,
and on February 21, 1899, a patent for the land was is-
sued by the state. The total amount of purchase money
and interest paid by the purchaser was $8,673.45. In
1900, the defendant in error became the owner of the
land, deraigning title from the patentee. In 1905, an
action was commenced by the state to cancel the pat-
ent and recover the land. The relief sought was denied,
and the matter is before this court on error.

An application for the sale of the land was made
to the State Board of Land Commissioners, and, at a
meeting of the board, held on May 26, 1887, the sale
was ordered at a minimum price of $150.00 an acre.
It does not appear that any order was made by the
board, while in session, and entered in its minutes that
the sale should be made at Pueblo. The Register of
the board, at the time of the sale, testified in a deposi-
tion taken in 1906, when he was 77 years old, and 19
years after the events concerning which he was tes-
tifying had transpired, and stated that he did not re-
call that a specific order was made at the time the
board was in session, indicating either the place of sale
or the person to conduct it, but said that to the best of
his recollection, after the sale was ordered, one of the
members of the board suggested that it would be ad-
vantageous to the state to make the sale in Pueblo, and

that he, the register, thereupon submitted this suggestion to each of the members of the board, and each assented thereto and directed that the sale be made in Pueblo by the County Superintendent of Schools. Thereupon, the register sent an advertisement of the sale to the County Superintendent, directing him to have it published. The superintendent, for the board, caused the advertisement to be published in a proper paper for a sufficient length of time. In this notice of sale, the land was described as one parcel of about five acres, comprising all the portions of two certain eighty acre tracts, lying within certain defined boundaries. The advertisement was made upon and copied into the newspaper from a printed blank designated for that purpose, and was, in all respects, regular, except that it contained the following clause which obviously should have been, but was not, erased:

"The parcels will be sold in the above order and each tract will be sold as forty acres—be the same more or less."

This clause is so out of place in the advertisement, and so obviously without meaning, that it could deceive no one and have no effect, and no further mention will be made of it. The notice was signed by the County Superintendent for the board, and, on its face, it purported that he was acting for the board. At the time and place designated in the notice, the County Superintendent, for the board, offered the land for sale at public auction, and struck it off to Hard, who was the highest bidder. It appears that the bidding was spirited among 15 or 20 bidders. Thereafter, the superintendent made report of the sale to the board, and the latter issued a certificate of purchase upon the sale so made and reported. On February 21, 1889, at a meeting of the board, it appeared that all the deferred payments were made, and the patent was ordered issued. The cause of action set forth in the ab-

stract, upon which the plaintiff in error relies, contains no allegation, nor was there any evidence of any fraud or collusion in the sale of this land, or that the state received less than the land was worth, or that the parcel sold contained more than about five acres, or that the state was, in any way, defrauded. Nothing appears in the record to indicate that the patent issued for the land was not good on its face. The state began an action for the cancellation of this patent about 16 years after it was issued, and about 18 years after the sale, and now, without any allegation, proof or claim of fraud or collusion, or that the state was defrauded, or that it did not receive what the land was worth, it is asking this court to reverse the lower court and to say that the patent, the conveyances to the defendant in error, and all the intermediate conveyances be cancelled. The defendant in error claims to be a remote grantee of the patentee, claiming under a patent, good on its face, without notice of any defects in the sale, and that this is a perfect defense. It also claims that even if it is regarded in the same light as the patentee, it is presumed that the public officers properly performed their duties until the contrary is proven; that in order to annul a patent like the one under consideration and destroy the title claimed under it, the facts calling for such action must appear from clear, convincing and unambiguous evidence: that there is not sufficient evidence in this case to overcome the strong presumptions presented by the patent itself, and that owing to this lack of evidence, as well as the want of proper allegations in the complaint, the patent itself affords sufficient reason to sustain the judgment of the court below. These claims of the defendant in error may possess force. They will not be discussed because it is not necessary to discuss them. The reasons, given by plaintiff in error, why the patent should be annulled are not sufficient, and a discussion of these reasons is

all that is necessary for the disposition of this matter.

Under section 9 of article IX of the constitution, the State Board of Land Commissioners had the direction, control and disposition of public lands of the state, under such regulations as were prescribed by law, and, by section 10 of article IX is was made the duty of the board to provide for the sale or other disposition of all lands theretofore, or which might thereafter be, granted to the state by the general government, under such regulations as may be prescribed by law. The regulations prescribed by law for the disposition of the lands of the state, at the time this sale was made, were contained in an act of the General Assembly, approved April 2, 1887, and may be found on pp. 328-338 of the session laws of that year. There is no question but that the board had full power and authority to sell the land described in the patent, at a sale made in substantial conformity with the statutory requirements. The plaintiff in error, in its brief, claims that the statutory requirements were disregarded in five different instances in the sale of this land, and, for these reasons, the patent is void and should be set aside. Section 12 of the act provided that all lands granted by Congress to the state for the support of schools were withdrawn from the market, and the sale thereof prohibited. It was provided, however, in the same section that any parcel of such land might be sold when the board was of the opinion that the best interests of the school fund would be served by offering such parcel for sale, and further provided that the land should be sold only at public auction and at not less than $3.50 per acre, and should be offered for sale, the same as other state lands.

1.   The plaintiff in error first argues that because no order was ever made or entered of record by the board while in session, directing the sale of the land to be made at Pueblo, the sale thereof was not legally made. Section 15 of the Act provides that "all sales

of the state land shall be held at the state capital unless otherwise directed by the State Board of Land Commissioners." The place of sale was thus left to the discretion of the board. The statute did not make it the imperative duty of the board to enter an order, directing a sale elsewhere than at the capital, if it was decided to sell it elsewhere. The statute prescribed that the board could sell any of the school lands only when it was of the opinion that the best interests of the school fund would be served thereby. In *Routt v. The Greenwood Cemetery Co.*, 18 Colo. 132, it was said that even if the determination of the service of the best interests of the school fund was prescribed as a condition precedent to a sale, the proof of the fact of such determination was not required to be shown of record, but that it might be shown by evidence *aliunde*, and that even without such showing it was to be presumed that public officers performed their duties until the contrary appears. So here, if it was necessary as a condition precedent that the board should determine that it was their discretion that the sale should be held in a place other than the state capital, the proof of that fact was not required to be shown by the record. What stronger or clearer proof could there be of the fact that it was the discretion of the board to sell the land at Pueblo than the fact that they sold it there? Not only did they sell it there, but the sale was reported to the board as made there, and the board approved and acted upon the sale and issued its certificate of purchase. How can it be said that the board did all these things concerning the sale at Pueblo, and, at the same time, say that the board had not exercised its discretion to sell the land there? Did the board do all these things concerning a sale at one place when it was their discretion that it be sold at another? It thus conclusively appears that the board exercised its discretion to sell the land where it was sold, and when it did so exercise its

discretion it must of necessity have thereby directed that the sale be made where they decided it should be made and where it was made. The only logical conclusion that can be reached is, that under the circumstances of this case, the sale was directed by the board to be made at Pueblo. Any other conclusion would lead to the result that the board did something and approved something that they did not direct.

2. The next reason, given by plaintiff in error, why this patent should be avoided is that the County Superintendent had no authority to advertise, hold or make the sale. When the evidence is analyzed, it is found that he did not advertise the sale except as one who was asked to insert an advertisement in a newspaper for another may be said to advertise it, nor did he hold or make the sale except as an auctioneer may be said to hold or make a sale. If the County Superintendent, in his own name, had advertised, held and made the sale, issued the certificate of purchase and the patent, the argument of the plaintiff in error would be more applicable than it is under the facts presented. That would be the attempted exercise of a power not possessed. True, the notice said that the superintendent would sell the land at public auction, at a time and place specified, but it was professed in the notice that it was for the State Board, thus plainly putting the superintendent in the capacity of the auctioneer of the sale. There is nothing in the act which says that the Governor, Superintendent of Public Instruction, Secretary of State, or Attorney General, who constituted the board, or the register, who was in the nature of its clerk, should act as auctioneer, either collectively or individually. If their presence was required at the place of sale, there is nothing in this record to show that they were not there, unless it be taken that no mention of their presence is conclusive proof of their absence. It is presumed, as was said in the case in the 18th

Colo., that this board performed its duties in conformity with the law, until it is shown that they did not, and it is not shown that they did not perform their duties in and about the conduct of this sale. The County Superintendent inserted the advertisement at the direction of and for the board, and he sold the land, as the auctioneer, at the direction of and for the board. There is no proof of fraud, collusion or bad faith connected with this sale as conducted. Section 6 of article IX of the constitution provided that the County Superintendent "shall be *ex officio* commissioner of lands within his county, and shall discharge the duties of said office under the direction of the State Board of Land Commissioners as directed by law." No attempt is made to construe this. It explains why the County Superintendent happened to be connected with this sale. He did not make the sale—it was the board that made the sale. In truth and in fact, as before said, the only capacity in which the Superintendent acted was that of auctioneer, and the servant of the board to carry the advertisement to the newspaper and tell them to print it. That the superintendent advertised, held and made the sale, in the sense that he usurped any of the functions of the board, as claimed by the plaintiff in error, had no existence in fact.

3. The plaintiff in error says that the land was not offered in legal subdivisions, nor was it laid out in lots and blocks and so sold, and for this reason the sale was void. This contention seems to be based upon Sections 13 and 14 of the Act of 1887. Section 13 provides that the board may cause any portion of the lands to be laid out in lots and blocks and be so sold from time to time at public auction in lots and blocks. This section does not make it necessary to so lay out the land. There was a proviso in Section 14 that in all sales of state land it shall be offered in legal subdivisions of not more than 160 acres. It is plain that this

provision only refers to land that is so situated as to form legal subdivisions, and not to such a small and irregular parcel of land as this was. It was not a legal subdivision—it was simply an irregular parcel of land, lying in two different subdivisions, and it was impossible to sell it as a legal subdivision. Section 12 of the act provided that any parcel might be sold. This was an irregular parcel of about five acres and could not be sold as forty acres or eighty acres.

4. It is contended that the patent should be annulled because the land was not surveyed prior to the sale, so as to determine the number of acres in it. In the first place, if it was necessary to survey this land prior to the sale there is no evidence that it was not surveyed sufficient to overcome the presumption that the board did what the law required. The statute does not say anything about surveying land. Of course to wisely exercise their discretion, the board ought to survey land if necessary. In the absence of fraud, patents can not be annulled, because the board failed to wisely exercise a discretion given to them. Besides, there is no evidence that this land ought to have been surveyed, or to show that its area was any more than about five acres.

5. Lastly, it is contended that the land was struck off to Hard for a less amount than the minimum price per acre, at which it was advertised to be sold. There is no evidence of this. On the contrary, the evidence is altogether the other way. The amount of land was about five acres; the price received was $7,950; the minimum price fixed in the advertisement was $150 per acre. Courts cannot go outside the record and speculate. If the State Land Board sold 35 or 40 acres of land, pretending that it was about five acres, such fact is not alleged or proven. If it had been, the decision of the lower court might have been altogether different. Courts can only determine matters from

the allegations and proofs submitted to them.   If such fact existed and was not alleged and proven, then the law officers for the state, at the inception and trial of the case, were derelict in the performance of their duties, in not, at least, attempting, in some way, to bring such matter to the attention of the court for determination as a sufficient or insufficient ground for the annulment of the patent.

Perceiving no error in the record, the judgment is, therefore, affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. JUSTICE WHITE not participating.